**TEXTILE PRODUCTIONS, INC.,**
**Plaintiff–Appellant,**

v.

**MEAD CORPORATION and Fiber Trim Sewing Company, Defendants–Appellees.**

No. 97–1245.

United States Court of Appeals, Federal Circuit.

Jan. 28, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined March 24, 1998.

Robert Warren Roddis, Attorney, Grosse Pointe Farms, Michigan, argued, for plaintiff-appellant.

Scott A. King, Thompson Hine & Flory LLP, Dayton, Ohio, argued, for defendants-appellees. With him on the brief was Mark P. Levy.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge,* and RADER, Circuit Judge.

---

* Senior Circuit Judge Glenn L. Archer, Jr. vacated the position of Chief Judge on December 24, 1997.

RADER, Circuit Judge.

The United States District Court for the Eastern District of Michigan dismissed Textile Production, Inc.'s (Textile's) complaint with prejudice in favor of The Mead Corporation (Mead) and Fiber Trim Sewing Company (Fiber Trim). Because Textile is not an exclusive licensee and therefore has no standing to sue for patent infringement, this court affirms the district court's dismissal of Textile's infringement claim. However, because Textile may have also asserted a claim for breach of contract against Mead, this court vacates the district court's dismissal of the complaint and remands with instructions.

## I.

During the late 1980s, employees of Mead and Textile collaborated on solving a problem for Ford Motor Company, one of Mead's customers. During assembly of its cars, Ford needed to pass a large bundle of wires through a narrow opening in the interior control panel and then quickly separate the wires for installation. Employees at Mead and Textile invented a sock-like spandex harness that allowed Ford to perform this operation more efficiently. In October 1989, Textile filed a United States patent application on behalf of the inventors of the harness.

In February 1990, while the patent application was still pending, Textile and Mead executed a General Agreement and a Purchase Agreement. Under the General Agreement, the parties agreed to split the costs of prosecuting the application and to concurrently execute the Purchase Agreement. The General Agreement also contained two other relevant provisions:

5. Upon conclusion of the examination of the PATENT APPLICATION, [Textile] shall assign its entire interest in and to any and all patents derived therefrom to [Mead].

6. Should any aforesaid assigned patent be proposed by [Mead] for reissue or reexamination, or become the subject of litigation, [Mead] shall give reasonable no-

tice to [Textile] and shall allow [Textile] to participate, through its ... counsel, in any such proceeding on any reasonable basis directed to protecting [Textile's] interests therein and in this Agreement. All legal expenses incurred by either party relating to this paragraph shall be shared on an equal basis by both [Textile] and [Mead].

The Purchase Agreement provided that Mead would "purchase" and Textile would "manufacture and supply" 100% of Mead's "requirements" for the wire harness sock product. Textile was to be Mead's "exclusive source" and Mead was to be Textile's "sole customer" for the "PRODUCT." The Purchase Agreement defined the "PRODUCT" as anything "covered within the literal description found in any then currently existing claim" of the pending U.S. patent application "or any U.S. patent which may be granted thereon." The Purchase Agreement also had a "second source contingency" provision. This provision provided:

16. Second Source Contingency. (a) If [Textile] cannot or shall not meet [Mead's] reasonable delivery requirements for the PRODUCT, then [Mead] shall have the right to obtain elsewhere (for the duration of [Textile's] failure to supply) the PRODUCT in the amount of any shortfall in the PRODUCT between what [Textile] can supply and what [Mead] requires; provided however, [Textile] shall be given (i) reasonable notice of [Mead's] intent to seek a second source, and (ii) an opportunity to either expand its own facilities within a reasonable time, or subcontract for the additional required capacity, and thus fully meet [Mead's] demands....

(b) In the event that a customer of [Mead] requires a second source of supply of the PRODUCT, [Mead] has the right to grant the necessary licenses so that the customer shall have the right to obtain the PRODUCT from a source other than [Textile] and [Mead] shall split with [Textile] any royalty fees received from such other source by [Mead]....

The Purchase Agreement set its own term as the greater of (1) three years, (2) the pendency of the U.S. patent application, or (3) the term of any last-to-expire U.S. patent that issued.

On May 21, 1991, the application issued as U.S. Patent No. 5,016,859 ("the '859 patent"). Under the General Agreement, Textile assigned the patent to Mead. The parties performed satisfactorily under the Purchase Agreement until roughly July 1992, when Textile's ownership changed hands. At that point, Mead claims that Ford began to reject Textile's harnesses with increasing frequency. Mead also asserts that Textile did little or nothing to eliminate the defects. Textile responds that it was doing the best it could.

In March 1995, without notifying Textile, Mead contacted Fiber Trim about manufacturing harnesses. Mead purchased part of its requirements from Fiber Trim until September 1995. At that point, Textile discovered that Fiber Trim was manufacturing the harnesses. In the ensuing dispute, Mead notified Textile that it was suspending performance under the Purchase Agreement.

Textile filed suit against Mead and Fiber Trim, alleging that Textile was an exclusive licensee of the '859 patent with an exclusive nationwide license to make the invention and that Mead and Fiber Trim had infringed this right. Textile filed a motion for partial summary judgment of liability for breach of contract against Mead and for patent infringement against both Mead and Fiber Trim. Mead and Fiber Trim filed a motion for summary judgment challenging Textile's standing to assert patent infringement. The district court found that Textile did not have standing to sue for patent infringement as an exclusive licensee, denied all other motions as moot, and dismissed the complaint with prejudice. Textile appeals.

## II.

The question of standing to sue for patent infringement is one which this court reviews *de novo*. *See Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551, 35 USPQ2d 1065, 1074 (Fed.Cir.1995) (in banc). Only a patentee may bring an action for patent infringement. *See* 35 U.S.C. § 281 (1994) ("A patentee shall have remedy by civil action for infringement of his patent."). Title 35 defines "patentee" as the party to whom the

patent issued or any successors in title to the patent. *See* 35 U.S.C. § 100(d) (1994). A licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds "all substantial rights" under the patent. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875, 20 USPQ2d 1045, 1048–49 (Fed.Cir.1991). Such a licensee is in effect an "assignee" and therefore a patentee. *See id.* at 874–75.

■ Thus, although a patentee has standing to sue in its own name, an exclusive licensee that does not have all substantial rights has standing to sue third parties only as a co-plaintiff with the patentee. *See Abbott Lab. v. Diamedix Corp.,* 47 F.3d 1128, 1130–33, 33 USPQ2d 1771, 1773–75 (Fed.Cir. 1995) (holding that a patentee-licensor must be allowed to intervene in a suit brought improperly by an exclusive licensee because the licensee had no standing to bring the suit alone). At least one exception to that rule exists, however: an exclusive licensee that does not have all substantial rights does have standing to sue in his own name when "necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself." *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891); *see also Littlefield v. Perry,* 88 U.S. (21 Wall.) 205, 223, 22 L.Ed. 577 (1874) (holding that plaintiff was an assignee, but stating that even if he were an exclusive licensee, he could bring suit in his own name, because the patentee was the infringer); *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1030, 34 USPQ2d 1444, 1447 (Fed.Cir.1995). On the other hand, a bare licensee has no standing at all. *See Rite–Hite,* 56 F.3d at 1552 (bare licensees have no standing); *Ortho,* 52 F.3d at 1034.

■ Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant. *See Ortho,* 52 F.3d at 1033–34. The use of the word "exclusive" is not controlling; what matters is the substance of the arrangement. *See id.* at 1032. Because patent rights are rights to "exclude

others," *see* 35 U.S.C. § 154(a)(1), a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that "others shall be excluded from practicing the invention" within the field covered by the license. *Rite–Hite,* 56 F.3d at 1552. Put another way, an exclusive license is "a license to practice the invention ... accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave." *Western Elec. Co. v. Pacent Reproducer Corp.,* 42 F.2d 116, 118 (2d Cir.1930). Thus, if a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees.

### III.

■ In this case, Textile asserts that it is an exclusive licensee—not an assignee—yet it seeks to bring an infringement action in its own name. Normally, this alone would be sufficient grounds to dismiss Textile's infringement claim. *See Abbott Lab.,* 47 F.3d at 1132. However, Textile invokes the exception outlined above, claiming that although Mead is the patentee, it is also "liable as an infringer." *See* 35 U.S.C. § 271(b).

However, only an exclusive licensee has standing to sue for infringement, even under the exception outlined above. The task before this court, therefore, is to determine whether Textile is actually an exclusive licensee or is simply a bare licensee.

■ This case presents the question of whether a requirements contract for a patented product automatically converts the exclusive supplier into an exclusive licensee of the patent. The contractual manufacturing rights of a party do not alone, however, confer a right to exclude all others from making an invention. To qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to anyone else a license in the area of exclusivity. The agreement between Mead and Textile does not clearly manifest a promise by Mead to do so.

The terms of paragraphs (a) and (b) of the "second source contingency" provision, however, in combination with Mead's covenant to

purchase all its requirements from Textile, do restrict Mead's ability to license third parties to some extent. Mead's express covenant to purchase all its requirements from Textile prevents Mead from licensing others to make the invention *for Mead.* Although paragraph (a) makes it clear that the restriction is not absolute, any right Mead has to license others to supply its own requirements arises only on the occurrence of conditions precedent. These conditions require a shortfall in Textile's performance and an opportunity to meet Mead's demands.

Similarly, paragraph (b) of the "second source contingency" provision, as properly construed, contains an implied promise that Mead will not license others to make the invention *for Mead's customers.* Again, although the paragraph expressly demonstrates that Mead has the right to do so, this right arises only on occurrence of a condition precedent, namely, that a Mead customer "requires" it.

However, both Agreements are silent about Mead's ability to grant licenses to suppliers for non-Mead customers or to those who wish to make the invention for their own use. In the face of Textile's promise to "assign its entire interest in and to any and all patents derived therefrom to [Mead]," this court must assume that Mead retained such rights. Thus, Mead did not promise that all others (beyond Textile) "shall be excluded from [making the invention]." *Western Elec.,* 42 F.2d at 118. Mead retained the right to license third parties to manufacture the harness for their own use or for sale to others. In sum, Mead did not grant Textile the rights of an exclusive licensee, but retained for itself important rights to license the invention to others.

In an effort to show that the Agreements result in more than just a requirements contract coupled with a bare license, Textile points to three other aspects of the Agreements. First, Textile asserts that because the term of the Purchase Agreement is coextensive with the term of the '859 patent, it shows the parties intended to grant an exclusive license under the patent. Yet, this provision of the Agreement is just as consistent with a bare license as it is with an exclusive license. Second, Textile points to the requirement that Mead split any royalty with Textile if paragraph (b) of the "second source contingency" provision is ever invoked. Although this is not a provision ordinarily found in a bare license agreement, it is not inconsistent with a bare license. More importantly, it does not evidence a covenant by Mead to not permit others to make the invention. Finally, Textile points to the General Agreement's "participation in litigation" provision. Again, however, this provision does not show that Mead gave Textile an exclusive right to make the invention. The right to participate in litigation does not necessarily encompass the right to participate as a party. Even if this provision were read broadly to give Textile an independent right to sue in Mead's name, such a provision would be ineffectual of its own force. A "right to sue" provision within a license cannot, of its own force, confer standing on a bare licensee. *See Ortho,* 52 F.3d at 1034. Accordingly, the district court correctly determined that Textile was not an exclusive licensee of the '859 patent and had no standing to assert patent infringement.

### IV.

After correctly determining that Textile had no standing to assert a claim of patent infringement, the district court denied all other pending motions as moot and dismissed the entire action with prejudice. The district court correctly dismissed the infringement claim with prejudice because Textile had its chance to show standing and failed. However, Textile apparently also asserted a breach of contract claim against Mead. If so, the district court lacked jurisdiction to dismiss that claim on the merits. In other words, without jurisdiction over the contract claim, the district court could not dismiss it on the merits.

Textile has not directly raised this issue in this court. However, this court may raise an issue of a lower court's subject matter jurisdiction *sua sponte. See Hambsch v. United States,* 857 F.2d 763, 764–65 (Fed.Cir.1988). "[E]very federal appellate court has a special obligation to 'satis-

fy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)).

Admittedly, it is unclear whether Textile actually asserted a breach of contract claim against Mead. Mead denies it, even though Textile's complaint may fairly be said to allege facts sufficient to make out such a claim, and the record clearly shows that Textile had a motion pending for summary judgment on such a claim. *See* Plaintiff's Motion for Partial Summary Judgment, or Alternatively for a Preliminary Injunction, ¶ 7a.

Assuming that Textile did assert a breach of contract claim, the district court correctly dismissed it, because the court did not have subject matter jurisdiction over the contract claim after it dismissed the patent infringement claim on the merits. Fiber Trim and Textile are both Michigan corporations; thus, the action could not be supported by diversity jurisdiction. *See* 28 U.S.C. § 1332(a), (c)(1). Therefore, when coupled with the patent infringement claim, only supplemental jurisdiction supported the breach of contract claim. *See* 28 U.S.C. § 1367(a) (1994). Upon dismissal of the patent infringement claim for lack of standing, the district court lacked supplemental jurisdiction to consider the contract claim.** *See* 28 U.S.C. § 1367(c)(3); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 104 F.3d 1296, 1297, 41 USPQ2d 1134, 1140 (Fed.Cir.1996) (holding that when a patent infringement claim is the jurisdiction-conferring claim and is dismissed for lack of section 281 standing, a district court has no discretion to exercise supplemental jurisdiction over pendent state law claims), *amending* 93 F.3d 774, 781, 39 USPQ2d 1826, 1832 (Fed.Cir.1996).

However, a lack of subject matter jurisdiction usually justifies only a dismissal, not a dismissal with prejudice. *See Fishburn v. Brown*, 125 F.3d 979, 981 (6th Cir.1997)

("[A]bsent subject matter jurisdiction the court has no authority to rule on the merits of [a] claim[ ]."); *see also Crotwell v. Hockman–Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir.1984) ("The district court properly concluded that it lacked subject matter jurisdiction. For some inexplicable reason, the defendants' motion to dismiss was granted 'with prejudice.' This was error. Since the court lacked subject matter jurisdiction over the action, it had no power to render a judgment on the merits.").

Thus, assuming that Textile did assert a breach of contract claim, the district court should have dismissed the contract claim without prejudice for lack of subject matter jurisdiction. It may well be that Textile intentionally dropped or waived its breach of contract claim at some point in the proceedings below. Based on the record before this court, however, it appears otherwise. Therefore, this court vacates the district court's dismissal of the complaint with prejudice and remands to the district court to determine whether Textile did assert a breach of contract claim. If it did, this court instructs the district court to enter an order dismissing Textile's patent infringement claim with prejudice, and its breach of contract claim against Mead without prejudice. If not, the district court should renew its original dismissal.

## V.

Accordingly, this court affirms the district court's dismissal of Textile's infringement claim, vacates the district court's dismissal of the complaint, and remands with instructions.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, VACATED–IN–PART, and REMANDED WITH INSTRUCTIONS.*

---

** If there were a proper ground for jurisdiction, the district court would also have erred in dismissing the contract claim with prejudice without addressing its merits. But, in that case, Textile would have had to raise the issue on appeal.