**MONSANTO COMPANY and CALGENE LLC,**
**Plaintiffs,**

v.

**AVENTIS CROPSCIENCE SA, and Aventis Cropscience USA LP,**
**Defendants.**

**No. CIV.A.00–1013–SLR.**

United States District Court,
D. Delaware.

Sept. 30, 2002.

**532**

Robert W. Whetzel, Esquire and Steven J. Fineman, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: John F. Lynch, Esquire, Susan K. Knoll, Esquire and Steven G. Spears, Esquire of Howrey Simon Arnold & White, LLP, Houston, Texas.

George Pazuniak, Esquire, Francis Di-Giovanni, Esquire and Oleh V. Bilynsky, Esquire of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware. Counsel for Defendants.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff Monsanto Company ("Monsanto") filed this action on December 4, 2000 against defendants Aventis Cropscience SA and Aventis Cropscience USA LP (collectively, "Aventis")[1] alleging infringement of United States Patent Nos. 4,535,060 and

---

1. Defendants' predecessor is Rhone–Poulenc Agro S.A. ("RPA"). For convenience, the court will refer to defendants and RPA as "Aventis."

5,094,945 (the "Comai patents"). On January 10, 2001, Monsanto amended its complaint to join Calgene LLC ("Calgene")[2] as co-plaintiff. Currently before the court are defendants' renewed motion for partial dismissal or, alternatively, for partial summary judgment based on plaintiffs' lack of standing[3] (D.I.59), and plaintiffs' motion for partial summary judgment of absence of license and validity with regards to the Comai patents. (D.I.70) For the reasons that follow, defendants' motion for partial dismissal is granted and plaintiffs' motion for partial summary judgment is granted in part and denied in part.

## II. BACKGROUND

### A. The Comai Patents

The Comai patents relate generally to crops that are genetically engineered to be tolerant to glyphosate, a commercial herbicide that kills plants by binding to a critical plant enzyme called EPSPS.[4] The specific technology at issue involves corn and soybeans made resistant to glyphosate by the insertion of foreign DNA. The Comai patents, assigned and issued to Calgene, were designed to protect the "aroA gene," a gene inserted into corn and soybeans that would produce EPSPS but be resistant to glyphosate.

2. Calgene LLC's predecessor is Calgene Inc., which was acquired by Monsanto in 1996. The following year, Monsanto created Calgene LLC from the assets of Calgene Technology Corporation (the original Calgene Inc.), the new Calgene Inc. (the former Calgene II, Inc.), and two other entities. Calgene LLC is a wholly-owned subsidiary of Monsanto, and a separate, limited liability company organized and existing under the laws of the State of Delaware. (D.I. 18 at 15) For convenience, the court will refer to both Calgene LLC and its predecessor, Calgene Inc., as "Calgene."

3. The court previously denied the parties' motions on standing and licensing without prejudice to renew pending the outcome of related appellate and arbitral proceedings. (D.I.42)

In January 1986, Calgene and Aventis entered into an agreement (the "1986 Partnership Agreement") for the joint development of glyphosate-resistant crops. (D.I.9, Ex. 1) In 1989, the parties amended the 1986 Partnership Agreement (the "1989 Amendment") to grant Aventis

> a royalty-free, worldwide and exclusive license under [the Comai] patents to make, use and sell aroA corn ... crops on behalf of the Partnership, subject to the DeKalb Seed Agreement....

(*Id.* at A20–21) Calgene retained for itself the "co-exclusive right, without the right to sublicense," to make and use the aroA gene in corn for experimental research purposes, and sufficient rights to meet its obligations under the DeKalb Seed Agreement.[5] (*Id.* at A22) The 1989 Amendment further stated:

> It is expressly understood that as the owner of the patents covering the aroA gene and Calgene Essential Technology, Calgene should take the leadership in enforcing or defending said patents.

(*Id.* at A28)

### B. The 1985 and 1991 DeKalb Agreements

In February 1985, Calgene and DeKalb Plant Genetics ("DeKalb") entered into an

4. EPSPS, or 5–enolpyruvylshikimate–3–phosphate synthetase, is required by plants for growth. Glyphosate inhibits EPSPS and thereby terminates growth of a plant.

5. Calgene also agreed to

> exert its reasonable best efforts to obtain an assignment to [Aventis] of its rights and responsibilities under its Seed Agreement with [DeKalb] for corn crops. [Aventis] will exercise its rights and perform its obligations under said Agreement on behalf of the Partnership.

(*Id.* at A23)

agreement (the "1985 DeKalb Agreement") to develop and market a commercial glyphosate-resistant corn using the aroA gene. In April 1991, Aventis assumed Calgene's responsibilities under the 1985 DeKalb Agreement (the "1991 DeKalb Agreement").[6] In a related action (the "North Carolina litigation"),[7] the Federal Circuit affirmed the decision of the Middle District of North Carolina, which concluded that DeKalb's commercial rights under the 1985 and 1991 DeKalb Agreements were limited only to Calgene's **bacterial** aroA gene. DeKalb held no rights to a corn-based EPSPS gene developed by Aventis. Based on the above Agreements, however, DeKalb and Aventis began to share other technology in an effort to develop glyphosate-tolerant corn.

Thus, as of 1991, DeKalb held an exclusive license only to the bacterial gene under the Comai patents in corn. All other rights under the Comai patents in corn were held by Calgene, or by Aventis on behalf of the Calgene–Aventis Partnership.

**6.** The 1991 DeKalb Agreement states, in pertinent part:

> WHEREAS, CALGENE wishes to assign to [Aventis], and [Aventis] accepts to assume and be bound by, CALGENE's rights and obligations under the Original Agreement; and as between [Aventis] and CALGENE, [Aventis] shall act on behalf of the PARTNERSHIP.
> . . .
> 1.1 CALGENE hereby assigns, conveys and sets over to [Aventis] all of CALGENE's right, title, interest in and to the Original Agreement.
> 1.2 CALGENE hereby designates to [Aventis] all of CALGENE's duties and obligations arising in connection with the Original Agreement; provided, however, that all grants of license made by CALGENE to [DeKalb] shall remain in full force and effect directly between CALGENE and [DeKalb].
> (*Id.* at A58–59)

**7.** *Rhone–Poulenc Agro, S.A. v. Monsanto Co. and DEKALB Genetics Corp.,* No.

### C. The 1994 Monsanto Litigation

In June 1994, Calgene and Aventis jointly sued Monsanto in the District of Delaware for patent infringement over Monsanto's development of glyphosate-tolerant soybeans using a bacterial EPSPS gene called CP4.[8] The parties reached a settlement agreement (the "1994 Settlement Agreement"), which required Monsanto to pay $8 million to Aventis and Calgene, who agreed to dismiss the action with prejudice.[9] (*Id.*, Ex. 6). As part of the settlement, Monsanto was given an exclusive, worldwide license under the Comai patents to all crops except corn.[10] (*Id.* at A92). With respect to corn, Calgene and Aventis had already granted DeKalb an exclusive license. Thus, Calgene and Aventis entered into a separate agreement with DeKalb (the "1994 DeKalb Agreement") which cancelled the parties' 1985 and 1991 Agreements and instead provided a new and different license to DeKalb:

> 3.1 DEKALB is hereby granted a world-wide, paid-up, **co-exclusive li-**

1:97CV01138, slip op. (M.D.N.C. February 8, 2000), *aff'd,* 272 F.3d 1335 (Fed.Cir.2001).

**8.** *Rhone–Poulenc Agrochimie S.A. and Calgene, Inc. v. Monsanto Co. and Asgrow Seed Co.,* No. 94–324–RRM (D.Del.1994).

**9.** The 1994 Settlement Agreement states that "Calgene is the owner of [the Comai patents]" and that prior to the execution of the Agreement:

> Calgene and [Aventis] possess[ed] exclusive rights under the [Comai patents] to all crops, except for corn, and that with respect to corn Calgene and [Aventis] only have granted a license to DeKalb. . . .
> (*Id.* at A90).

**10.** This exclusive license was subject to Aventis's retention of a nonexclusive license under four claims of United States Patent No. 4,769,061 involving the right to spray glyphosate over tolerant dicot plants (including soybeans), and to Calgene's retention of a nonexclusive license under the Comai patents in cotton. (*Id.* at A93).

cense under the [Comai] Patents for the field of use of corn. Upon execution of the [1994 Settlement Agreement], DE-KALB and Monsanto each shall possess a world-wide co-exclusive license for corn under the [Comai] Patents and together they shall possess a world-wide exclusive license for corn under the [Comai] Patents.... DEKALB and Monsanto each shall have the right to grant sublicenses under the [Comai] Patents for corn without any further payment being made to the other.

(*Id.* at A66) (emphasis added). With the 1994 DeKalb Agreement executed, Calgene, Aventis and Monsanto signed the 1994 Settlement Agreement, which provides, in pertinent part:

Calgene and [Aventis] agree to grant and do hereby grant to Monsanto a fully paid-up, worldwide **co-exclusive license** to conduct any activity without restriction under the [Comai] Patents with respect to corn. It is understood that (1) DeKalb possesses a world-wide co-exclusive license under the [Comai] Patents for corn, (2) Calgene and/or [Aventis] agree not to grant any further licenses under the [Comai] Patents for corn and (3) DeKalb and Monsanto together possess a world-wide exclusive license under the [Comai] Patents for corn....

. . .

2.2 Monsanto shall have the right to grant sublicenses under the [Comai]

Patents pursuant to the licenses ... without any further payment being made to Calgene, [Aventis] or DeKalb. (*Id.* at A94) (emphasis added). The 1994 Settlement Agreement further provides that Aventis "shall convey title to Calgene of any of the [Comai] Patents held in the name of [Aventis]" and that "Monsanto shall have the right to bring an action for enforcement [of the Comai patents] against an infringer," but Calgene could bring such an action if Monsanto declined.[11] (*Id.* at A97). Finally, it contains an assignability provision that limits the parties' right to assign the Agreement

to its Affiliates or to any of the following: any Third Party which survives a merger with a Party or its Affiliate; any Third Party which acquires substantially all of the assets of a Party or its Affiliate; or any Third Party which acquires that portion of the assets of a Party or its Affiliate necessary to perform the obligations of a Party or its Affiliate under this Agreement.

(*Id.* at A100).

### D. Monsanto's Acquisition of Calgene

In 1996, Monsanto acquired Calgene.[12] The 1986 Calgene–Aventis Partnership Agreement provided that if Calgene sold a "substantial percentage" of itself to an Aventis competitor, Aventis could terminate the Partnership Agreement and obtain an exclusive license to all of the partnership technology.[13] Thus, on June 3,

---

11. Calgene and Aventis also agreed to "indemnify and hold harmless Asgrow, Monsanto, and their respective Affiliates, licensees, sub-licensees and customers from any loss, cost, liability or expense ... arising from any claim or claims DeKalb may make asserting infringement of or other rights under the [Comai] Patents." (*Id.* at A96).

12. The details of this complicated transaction are described in D.I. 9, Exs. 11–13.

13. The Partnership Agreement provided that Aventis or Calgene have the right to declare

the partnership terminated or dissolved if Calgene sells a "substantial percentage" of its shares to an "[Aventis] competitor." (*Id.* at A12). If this occurs, then:

CALGENE shall grant to [Aventis] a royalty-free, exclusive, worldwide license under all industrial property rights under the partnership and available to the partnership.... Such a license shall include, but not be limited to, the grant to [Aventis] of a royalty-free, worldwide license and right to sublicense, the making, using and selling of cell lines, modified genes, constructs, trans-

1997, in accordance with the 1986 Partnership Agreement, Aventis declared its partnership with Calgene terminated. (*Id.* at A105). Calgene accepted the termination on September 22, 1997, and granted Aventis an exclusive license to all partnership technology subject to the rights previously granted to Monsanto in the 1994 Settlement Agreement.[14] (*Id.* at A106). On May 27, 1999, Calgene filed a Demand for Arbitration, alleging, *inter alia*, that Aventis' termination of the 1986 Partnership Agreement be disregarded because of breaches of duty by Aventis, and that the 1986 Partnership Agreement be deemed terminated pursuant to Article 13, Section A.[15] On September 25, 2001, an arbitration panel denied all of Calgene's claims, stating:

> formed plants, and seeds (consistent with Seed Agreements) that: (i) carry a gene of resistance to shikimate herbicides; or (ii) are resistant to herbicidal properties of compounds acting on the shikimate pathway; or (iii) are resistant to herbicidal properties of compounds disclosed in [several of Aventis's French patent applications].
>
> (*Id.* at A14).
>
> The Partnership Agreement identified "industrial property right" as
>
> > any invention within the scope and purpose (including, but not limited to, normal industrial patents, utility patents, plant variety protection and/or plant patents) conceived or made while the partnership is in effect and arising directly out of work carried out pursuant to said partnership.
>
> (*Id.* at A5).

**14.** The Termination Agreement provides, in pertinent part:

> In accordance with Article 13, Section B of the Partnership Agreement, Calgene hereby grants [Aventis], as of June 3rd, 1997, a royalty-free, exclusive worldwide license under all industrial rights under the partnership. As used herein industrial rights includes any rights developed under the Partnership Agreement, the September 30, 1989 Amendment to such Partnership Agreement and the October 1, 1989 Other

> 1. [Calgene] does not have any rights or interests in [Aventis'] technology, including the Double Mutant Maize Gene,[16] the Optimized Transit Peptide, and RD–125.
> 2. [Calgene] failed to establish that [Aventis] breached the Partnership Agreement, as amended, or that Aventis breached any fiduciary duty to Calgene in connection with that agreement.
>
> . . .

(D.I.61, Ex. 17). The panel also found that [o]n June 3, 1997, [Aventis] exercised its right under Article 11(7) to declare the Partnership Agreement terminated. Upon such termination, under Article 13.B [Aventis] automatically received a royalty-free, exclusive, worldwide license of all industrial property rights under

> Crops Agreement, and in particular includes the genetic sequences set forth in Exhibit A hereto and made a part hereof. The rights transferred under this license include a certain non-exclusive license retained by Calgene under the Patents and limited to cotton, as provided under the December 1994 Settlement Agreement among Monsanto, Asgrow, [Aventis], and Calgene. . . .
>
> The exclusive rights granted hereunder to [Aventis] are transferable, assignable and capable of being sublicensed. [Aventis] accepts that the license granted hereunder is subject to certain rights previously granted to Monsanto Company.
>
> (*Id.* at A108).
>
> "Exhibit A" includes both the bacterial and corn EPSPS genes. (*Id.* at A109).

**15.** Article 13, Section A of the 1986 Partnership Agreement provides that, in the event of termination by Aventis:

> [Aventis] shall grant to CALGENE a royalty-free, exclusive, worldwide, limited field of use license to [its] herbicide products, or any other shikimate herbicide, with the right to sublicense thereunder . . .
>
> (D.I.9, Ex. 1)

**16.** Aventis' Double Mutant Maize Gene is the accused corn-based EPSPS gene at bar.

the partnership and available to the partnership. Thus, even if Calgene were to have had any interest in partnership property prior to June 3, 1997, upon [Aventis'] termination of the partnership, [Aventis] became the exclusive owner or assignee of all such property. (*Id.*). On September 30, 2002, this court confirmed the arbitration award.[17] Monsanto is bound by the arbitration award based on its privity with Calgene.

### E. The North Carolina Litigation

In 1996, DeKalb and Monsanto agreed to develop a commercial glyphosate tolerant corn, introduced into the market the following year as Roundup Ready ® corn. In October 1997, Aventis sued DeKalb and Monsanto in the Middle District of North Carolina over Roundup Ready ® corn, which Aventis claimed was based on its corn-based EPSPS gene misappropriated by DeKalb. Aventis sought to, *inter alia:* (1) rescind the 1994 DeKalb Agreement because of DeKalb's concealment and fraud; and (2) enjoin Monsanto and DeKalb from commercializing Roundup Ready ® corn because the rescission of the license terminated their rights under certain patents. (*Id.* at A121–126)

The case went to trial in April 1999. A federal jury found that DeKalb had defrauded Aventis into entering the 1994 DeKalb Agreement and awarded Aventis unjust enrichment and punitive damages. Later, another jury found that Roundup Ready ® corn infringed an Aventis patent, and that DeKalb misappropriated Aventis's trade secrets. On February 8, 2000, the North Carolina court affirmed the jury verdicts, rescinded the 1994 DeKalb Agreement, and enjoined DeKalb from further patent infringement. (*Id.,* Ex. 10). On November 19, 2001, the Federal Circuit affirmed the rulings of the North Carolina court. (D.I.61, Ex. 16). Although the North Carolina court dismissed Monsanto from the North Carolina litigation on grounds not relevant to the present action, Monsanto has agreed to be bound and is bound by the final judgment entered against DeKalb.

In rescinding the 1994 DeKalb Agreement, the North Carolina court held that DeKalb and Aventis were "returned to their respective positions prior to the signing of the 1994 Agreement." (*Id.* at A149). In other words, the North Carolina court reinstated the 1985 and 1991 DeKalb Agreements. Thus, DeKalb was left with an exclusive license to only the bacterial aroA gene under the Comai patents in corn. The 1994 Settlement Agreement was not altered by the North Carolina litigation.

### III. STANDARDS OF REVIEW

#### A. Standing

Standing in a patent infringement case is derived from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994). "The question of standing to sue is a jurisdictional one." *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551 (Fed.Cir.1995). Standing is a "threshold issue in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS Inc. v. City of Dal-*

---

**17.** *In re the arbitration between Calgene LLC v. Rhone–Poulenc Agro, S.A. now Aventis Crop-* science, S.A., No. 01–649–SLR (D.Del.2001).

*las,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

■■■ It is well settled that standing cannot be "inferred argumentatively from averments in the pleadings," *Grace v. Am. Cent. Ins. Co.,* 109 U.S. 278, 284, 3 S.Ct. 207, 27 L.Ed. 932 (1883), but rather "must affirmatively appear in the record," *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Additionally, the party who seeks the exercise of jurisdiction in its favor has the burden of clearly alleging facts demonstrating that it is a proper party to invoke judicial resolution of the dispute. *Id.* In the present case, the court must determine whether there is affirmative evidence in the record indicating that Monsanto and Calgene have standing to sue Aventis for patent infringement.

### B. Summary Judgment

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine

issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Plaintiffs' Standing to Sue on Corn

■■■ Only a "patentee" can bring an action for patent infringement. 35 U.S.C. § 281 (1994); *Textile Prods., Inc. v. Mead Corp.,* 134 F.3d 1481, 1483 (Fed.Cir.1998). The term "patentee" comprises "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). An exclusive licensee may bring suit in its own name if the exclusive licensee holds "all substantial rights" in the patent. *Textile Prods.,* 134 F.3d at 1484; *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875 (Fed.Cir.1991). "A grant of all substantial rights in a patent amounts to an assignment—that is, a transfer of title in the patent—which confers constitutional standing on the assignee to sue another for patent infringe-

ment in its own name." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 248 F.3d 1333, 1345 (Fed.Cir.2001) (citations omitted). "An exclusive licensee that does not have all substantial rights has standing to sue third parties only as a co-plaintiff with the patentee." *Textile Prods.,* 134 F.3d at 1484. "Without the patentee as plaintiff, the remedies provided in the patent statute are unavailable except in extraordinary circumstances 'as where the patentee is the infringer, and cannot sue himself."' *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1030 (Fed.Cir.1995) (quoting *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891)).

> Conversely, a nonexclusive license or "bare" license—a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention and under which the patent owner reserves the right to grant similar licenses to other entities—confers no constitutional standing on the licensee under the Patent Act to bring suit or even to join a suit with patentee because a nonexclusive (or "bare") licensee suffers no legal injury from infringement.... An exclusive licensee receives more substantial rights in a patent than a nonexclusive licensee, but receives fewer rights than an assignee of all substantial patent rights.

*Intellectual Prop. Dev.,* 248 F.3d 1333, 1345 (citations omitted).

To determine whether an agreement transfers all or fewer than all substantial patent rights, a court must ascertain the intention of the parties and examine the substance of what was granted by the licensing agreement. *See Vaupel,* 944 F.2d at 874. The party asserting that it has all substantial rights in the patent "must produce ... written instrument[s] documenting the transfer of proprietary rights." *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1250 (Fed.Cir.2000). "The title of the agreement at issue, which uses the term 'license' rather than the term 'assignment,' is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination." *Intellectual Prop. Dev.,* 248 F.3d 1333, 1344 (citing *Speedplay,* 211 F.3d at 1250).

In the case at bar, the court concludes that plaintiffs do not hold "all substantial rights" in the Comai patents to enable the court to exercise jurisdiction over plaintiffs' claims concerning corn-based EPSPS genes. In 1994, the Calgene–Aventis Partnership granted Monsanto and DeKalb "co-exclusive" licenses to the Comai patents in corn, which enabled each to make, use, sell and license the patents to anyone without regard to the other. Thus, these "co-exclusive" licenses amounted to nothing more than nonexclusive licenses, which confer no standing on a party to bring or even join a suit for infringement. Upon rescission of the 1994 DeKalb Agreement, Monsanto's "co-exclusive" license remained nonexclusive, and DeKalb was left with only an exclusive license to the bacterial EPSPS gene pursuant to the 1985 and 1991 DeKalb Agreements. DeKalb's "co-exclusive" license reverted to the Calgene–Aventis Partnership, which now held the right to make, use, sell and license the Comai patents in corn to anyone without regard to Monsanto (but subject to Monsanto's rights to do the same). Upon termination of the Calgene–Aventis Partnership, Calgene granted Aventis a "royalty-free, exclusive, worldwide license" to all partnership technology, including the corn-based EPSPS gene, rendering Aventis "the exclusive owner or assignee of all such property." Consequently, the court finds that Calgene transferred "all substantial rights" in the Comai patents in

corn to Aventis, leaving Calgene with no rights in the patents and, therefore, no standing to pursue claims regarding corn-based EPSPS genes. Since neither plaintiff has standing to sue over the corn-based EPSPS gene, the court shall partially dismiss the action for lack of jurisdiction.

### B. Defendants' License to the Comai Patents in Soybeans

█ Plaintiffs' motion for summary judgment that defendants are not licensed to the Comai patents in soybeans is granted.[18] The court finds that defendants have failed to create a genuine issue of material fact as to the existence of a license to the Comai patents in soybeans.[19]

### C. Assignor Estoppel

█ Plaintiffs argue that defendants should be estopped from challenging the validity of the Comai patents under the doctrine of assignor estoppel. Assignor estoppel prevents a party who assigns a patent to another from later challenging the validity of the assigned patent. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1377 (Fed. Cir.1998). This doctrine prevents the "unfairness and injustice" of permitting a party "to sell something and later to assert that what was sold is worthless." *Id.* An assignment contains an "implicit representation by the assignor that the patent rights that he is assigning (presumably for value) are not worthless." *Id.*

"A determination whether assignor estoppel applies in a particular case requires a balancing of the equities between the parties." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1579 (Fed. Cir.1993). Nevertheless,

> [d]ue to the intrinsic unfairness in allowing an assignor to challenge the validity of the patent it assigned, the implicit representation of validity contained in an assignment of a patent for value raises the presumption that an estoppel will apply. Without exceptional circumstances (such as an express reservation by the assignor of the right to challenge the validity of the patent or an express waiver by the assignee of the right to assert assignor estoppel), one who assigns a patent surrenders with that assignment the right to later challenge the validity of the assigned patent.

*Mentor,* 150 F.3d at 1378. Assignor estoppel also prevents parties in privity with an estopped assignor from challenging the validity of the patent. *See Diamond Scientific v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed.Cir.1988).

█ In the case at bar, the Calgene–Aventis Partnership granted Monsanto an exclusive, worldwide license in the Comai patents to all crops except corn in exchange for $8 million. Although Calgene was the legal owner of the Comai patents at the time of the assignment to Monsanto, Aventis was in privity with Calgene and received value for the assignment. Thus, the court finds that Aventis made an implicit representation to Monsanto that the Comai patents were valid. As there are no exceptional circumstances present in this case, the court concludes that it would be inequitable for Aventis to now challenge the validity of the Comai patents.

18. Plaintiffs' motion that defendants are not licensed to the Comai patents in corn is denied as moot in light of the court's conclusion that plaintiffs lack standing to sue over the corn-based EPSPS gene.

19. Defendants cite only to a nonexclusive license to spray glyphosate over soybeans under United States Patent No. 4,769,061, which is not asserted in this action.

## V. CONCLUSION

For the reasons stated, defendants' motion for partial dismissal is granted, defendants' motion for partial summary judgment is denied as moot, and plaintiffs' motion for summary judgment is granted in part and denied in part. An appropriate order shall issue.

### ORDER

At Wilmington, this 30th day of September, 2002, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendants' renewed motion for partial dismissal (D.I.59–1) is granted.

2. Defendants' renewed motion for partial summary judgment (D.I.59–2) is denied as moot.

3. Plaintiffs' motion for partial summary judgment of absence of license and validity with regards to the Comai patents (D.I.70) is granted in part and denied in part as follows:

    a. Plaintiffs' motion for partial summary judgment that defendants are not licensed to the Comai patents in soybeans is granted;

    b. Plaintiffs' motion for partial summary judgment that defendants are not licensed to the Comai patents in corn is denied as moot;

    c. Plaintiffs' motion for partial summary judgment that defendants are estopped from challenging the validity of the Comai patents is granted.