**MISSION I–TECH HOCKEY LTD., Plaintiff,**

v.

**OAKLEY, INC., Defendant.**

**No. 05CV0979LSP(AJB).**

United States District Court, S.D. California.

Sept. 22, 2005.

David B. Abel, Squire, Sanders & Dempsey L.L.P., Los Angeles, CA, for Plaintiff.

Gregory L. Weeks, Weeks, Kaufman & Johnson, Solana Beach, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (15–1) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE (15–2)

PAPAS, United States Magistrate Judge.

This action arises from a Settlement and License Agreement between Plaintiff Mission I–Tech Hockey Ltd.'s (hereafter "Plaintiff" or "Mission") predecessor and Defendant Oakley, Inc. (hereafter "Defendant" or "Oakley") in case number 01–2374, a case previously litigated in this Court (hereafter "the Oakley case"). In the Oakley case, on February 18, 2003, the parties agreed that the undersigned would have jurisdiction to decide, *inter alia*, "all disputes arising out of the terms of the Settlement Agreement once completed and that any decision by the undersigned shall be FINAL AND BINDING WITH NO APPEAL..." (Consent to Jurisdiction of A Magistrate Judge and Order of Reference, February 18, 2003, case no. 01–2374)

On May 5, 2005, Mission filed the instant action against Oakley, asserting causes of action for Breach of the Settlement and License Agreement and for Patent Infringement. On May 26, 2005, the parties stipulated that the instant case be transferred to the undersigned for all purposes. They further stipulated that the instant case arises from the terms and conditions of the Settlement and License Agreement noted above.

Oakley has filed a Motion to Dismiss Mission's Second Cause of Action for Patent Infringement and a Motion to Strike Mission's Request and Prayer for Damages and Request for Jury Trial. Mission

has filed an Opposition to the Motions to Dismiss and Strike. Oakley has filed a Reply to the Opposition.

## STANDARD FOR MOTION TO DISMISS

Generally under Federal Rule of Civil Procedure 12(b)(6), a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his or her claim for relief. *Church of Scientology v. Flynn,* 744 F.2d 694, 696 (9th Cir.1984). In applying this standard, the court must treat all of the plaintiff's factual allegations as true. *Experimental Eng'g, Inc. v. United Technologies Corp.,* 614 F.2d 1244, 1245 (9th Cir. 1980). However, the court is not bound to assume the truth of legal conclusions simply because they are stated in the form of factual allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). To dismiss with prejudice, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven. *Reddy v. Litton Indus.,* 912 F.2d 291, 293 (9th Cir.1990), *cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991).

Dismissal is also proper if a complaint is vague, conclusory, and does not set forth any material facts in support of the allegation. *North Star Intern. v. Arizona Corp. Comm'n,* 720 F.2d 578, 583 (9th Cir.1983). Plaintiff bears the burden of pleading sufficient facts to state a claim; a court will not supply essential elements of the claim that were not initially pled even in the context of a *pro se* plaintiff. *Richards v. Harper,* 864 F.2d 85, 88 (9th Cir.1988); *Ivey v. Board of Regents of University of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). Although the Federal Rules of Civil Procedure are very liberal as to pleading, a complaint is subject to dismissal if the pleading fails to reasonably inform the adverse party of the asserted cause of action. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court must give a litigant leave to amend his complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir. 1987).

A. *Mission Does Not Have Standing To Assert a Cause of Action for Patent Infringement*

1. *Mission's Complaint*

Mission contends that it has an exclusive renewable license to manufacture, sell and offer for sale hockey face shield products incorporating Oakley's '848 and '705 patent technology, in exchange for a certain agreed annual royalty payments, or a minimum annual payment. (Complaint at paragraph 9) Under the Settlement and License Agreement, Oakley is obligated to enforce the '848 patent against third party infringers. (Complaint at paragraph 10) The Settlement and License Agreement provides that Oakley shall not license any third party infringer nor manufacture for the benefit of any third party similar products incorporating the '848 and the '705 patents or any foreign equivalent thereof. (Complaint at paragraph 11) Mission asserts that, during the term of the Settlement and License Agreement, *no party other than Itech would thereafter have the right to manufacture, sell or offer for sale products covered by the '848 patent.* (Complaint at paragraph 13, emphasis added) Mission contends that as the exclusive licensee of the '848 and '705 patents in the limited field of hockey shield products, it has the standing to assert the claim of patent infringement against Oakley. (Complaint at paragraph 20) Mission asserts that Oakley has engaged in intentional acts to infringe and/or induce in-

fringement of the '848 and '705 patents by manufacturing hockey shield products covered by the '848 patent, for the benefit of a competitor, allowing the competitor to sell and offer for sale such products to its customers and to the general public. (Complaint at paragraphs 32, 33) Oakley denies these allegations.

### 2. *Settlement and License Agreement*

Since the parties have stipulated that their dispute arises from the Settlement and License Agreement, the pertinent parts of that Agreement are stated here:

[Ed. Note: Agreement redacted by the Court.]

### 3. *Analysis*

#### a. *Mission's Complaint Fails to Allege That It Has Standing to Sue Oakley for Patent Infringement*

The only support for the reference in Mission's Complaint that it has standing to sue Oakley for patent infringement is that, as an exclusive licensee of the '848 patent, it has standing to assert a patent infringement claim. This statement is supported by Mission's reference to *U.S. Valves v. Dray* 212 F.3d 1368 (Fed.Cir.2000)

However, *U.S. Valves* does not discuss an exclusive licensee's standing to sue a patentee. Rather, it discusses the court's jurisdiction to hear the appeal in that case. Therefore, the holding of *U.S. Valves* does not support Mission's allegation of standing to sue Oakley for patent infringement. Mission cites no other cases to buttress its position.

#### b. *Oakley Has Retained Substantial Rights to the Patent*

Oakley contends that it has retained substantial rights in the patent, even though it granted an "exclusive" license to Mission. Mission asserts that as an "exclusive" licensee, it has standing to sue Oakley.

It is well settled "that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas* 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). A Plaintiff has the burden "clearly to allege facts demonstrating it is a proper party to invoke judicial resolution of the dispute." *U.S. v. Hays* 515 U.S. 737, 743, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995)

Only a patentee may bring an action for patent infringement. 35 U.S.C. § 281. A patentee is the party to whom the patent issued or any successors in title to the patent. 35 U.S.C. § 100(d). A licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds "all substantial rights" under the patent. *Textile Productions, Inc. v. Mead Corp.* 134 F.3d 1481, 1484 (Fed.Cir.1998)

A licensee who has no right to exclude others from making, using, or selling the licensed products has no legally recognized interest that entitles it to bring an infringement action. *Abbott Laboratories v. Diamedix Corp.* 47 F.3d 1128, 1131 (Fed.Cir.1995), *Arachnid, Inc. v. Merit Industries* 939 F.2d 1574, 1579 n. 7 (Fed.Cir. 1991)

An exclusive licensee that does not have all substantial rights has standing to sue third parties only as a co-Plaintiff with the patentee. *Textile, supra* at 1484, citing *Abbott* 47 F.3d at 1130–1133. However, an exclusive licensee that does not have all substantial rights does have standing to sue in his own name when "necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself." *Textile, supra* at 1484, citing *Waterman v. Mackenzie* 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891).

To determine whether a licensee is an exclusive licensee, the court must ascertain the intent of the parties to the license as manifested by the terms of their agreement and examine the substance of the grant. The use of the word "exclusive" is not controlling; what matters is the substance of the arrangement. *Textile, supra* at 1484. Therefore, the Court must determine whether Mission is actually an "exclusive" licensee of Oakley's '848 patent.

Here, Mission does not have "all substantial rights" to the patent. Instead, Oakley has retained many substantial rights to the patent:

First, Oakley is obligated to enforce the patent and any foreign equivalents thereof, at its cost, against third party infringers, including using litigation to do so. (Settlement and License Agreement, V, paragraph 2) Further, Oakley is obligated to stop a third party infringer from selling infringing products, including using litigation to do so. (Settlement and License Agreement, V, paragraph 3)

Second, Oakley retained the rights to review and approve or disapprove of Mission's advertisements that include references to the features or technology described in the patent, and/or any rights received under the License Agreement. (Settlement and License Agreement, VI, paragraph 5)

Third, Oakley agreed to obtain and maintain the equivalent of the patent in foreign countries where it has sought, or is seeking, patents. (Settlement and License Agreement, VI, paragraph 6)

Fourth, Mission does not have the right to sublicense or transfer any rights it may have under the License Agreement. (Settlement and License Agreement, VI, paragraph 7)

Mission argues however, that the Settlement and License Agreement contains "no reservation of rights, express or implied, by Oakley in the field of hockey shields." Hence Mission . . . is expressly the exclusive licensee *to the exclusion of Oakley* within the field of hockey shields and thus has standing to sue Oakley for patent infringement. (Mission's Points & Authorities in Support of its Opposition to Motion to Dismiss, at 9, emphasis added)

Mission cites *Dreamlite Holdings, Ltd. v. Kraser,* 705 F.Supp. 98 (E.D.N.Y.1988) in support of its position. However, in *Dreamlite,* the license agreement gave Dreamlite the exclusive right, *inter alia,* "to defend and enforce the Patent and to prevent infringement of the patent." *Dreamlite, supra* at 100. In this case, Mission does not enjoy the exclusive right to enforce the patent and/or prevent infringement of the patent. In fact, the opposite is true. Oakley is specifically obligated to enforce the patent and prevent infringement of the patent. (Settlement and License Agreement, V, paragraphs 2, 3) Moreover, *Dreamlite* is not binding on this Court.

Mission also cites *Sanofi, S.A. v. Med-Tech Veterinarian Products* 565 F.Supp. 931 (D.N.J.1983). However, in *Sanofi,* the court noted "(e)xclusive licensees have the right to enjoin acts of infringement and, because the presence of the patentee is usually necessary to pursue such relief, may compel the patentee to become a party to the lawsuit." Again, here, Mission does not have the exclusive right to enjoin acts of infringement; Oakley retained that right. Moreover, *Sanofi* is not binding on this Court.

Mission also cites *Research Frontiers, Inc. v. Marks Polarized Corp.* 290 F.Supp. 725 (E.D.N.Y.1968). While the court in *Research Frontiers* noted that a licensee may sue his licensor under the patent laws, even though the licensor is the owner of the patents, *Research Frontiers, supra* at 727, the case does not discuss the specific

rights given to the licensee, nor the specific rights retained by the licensor. Therefore, *Research Frontiers* is not helpful in this Court's analysis. This case is also not binding on this Court.

Mission also cites *Rite–Hite Corp. v. Kelley Company, Inc.* 56 F.3d 1538 (Fed. Cir.1995). However, in *Rite–Hite*, the court noted:

> Generally, one seeking money damages for patent infringement must have held *legal title* to the patent at the time of the infringement. *A conveyance of legal title by the patentee can be made only of the entire patent, an undivided part or share of the patent, or all rights under the patent* in a specified geographical area. A transfer of any of these is an assignment and vests in the assignee with title in the patent, and a right to sue infringers. A transfer of less than one of these three interests is a license, not an assignment of legal title and *it gives the licensee no right to sue for infringement* at law in the licensee's own name.

*Rite–Hite, supra,* at 1551–1552 (emphasis added, citations and footnotes omitted)

Here, Mission does not have legal title to the patent because all rights in the patent were not conveyed to it in the Settlement and License Agreement. Further, Mission does not have the right to sue third parties for infringement of the patent; Oakley retained that right.

Finally, Mission's attempt to characterize itself as an exclusive licensee *to the exclusion of Oakley* is unavailing. While Mission notes that the Settlement and License Agreement contains no reservation of express or implied rights in the field of hockey shields, the Settlement and License Agreement shows otherwise. For example, Section VI, paragraph 4 of the Settlement and License Agreement provides that if the wholesale price of an

Oakley hockey shield featuring '848 patent technology is reduced from the price as of the date of the Agreement, the royalty on the corresponding Itech product shall also be reduced. The logical conclusion to a reading of that language is that Oakley retains the rights to, and will continue to, manufacture and sell hockey shields featuring '848 patent technology. The wholesale price of the patented product can be reduced only if Oakley retains the right to manufacture and sell the product. To interpret this provision any other way would mean that Oakley would have no control over the pricing of the patented hockey shields, which does not comport with the language nor logical interpretation of the provision. Further, to interpret this provision any other way would render it incompatible with the other terms of the Agreement. A license agreement in which Mission holds all exclusive rights would not need § IV, paragraph 4, because Mission would have "exclusive" control over manufacture and sale of the licensed hockey shields. Mission would therefore have "exclusive" control over the wholesale pricing of the hockey shields. Therefore, the Settlement and License Agreement had to envision Oakley manufacturing and selling the hockey shields. Moreover, Mission attempts to point to language that *is not* in the Settlement and License Agreement, when ample language *is present* to demonstrate that substantial rights to the patent have been retained by Oakley.

As a result, the Court concludes that Mission is not an "exclusive" licensee of the patent and does not have standing to sue Oakley for patent infringement. The Court does not see any way Mission could amend its Complaint to comport with this ruling. Therefore, Oakley's Motion to Dismiss Mission's cause of action for Patent Infringement is GRANTED with prejudice.[1]

---

1. The Court notes that Mission has objected    to several exhibits submitted by Oakley in

### B. *Motions to Strike*

Oakley also requests that Mission's demand for damages and its Request for Jury Trial, be stricken from the Complaint.

#### 1. *Mission's Demand for Damages*

Mission claims that it has and will continue to suffer monetary damages as a result of Oakley's conduct. (Complaint at paragraph 34) Therefore, it seeks damages against Oakley (Complaint, Prayer at paragraph 1) Oakley contends that since Mission is not the owner of the patent, it cannot be awarded damages.

■ One seeking to recover money damages for patent infringement must hold legal title to the patent during the time of the infringement. While a licensee may be able to obtain equitable relief from the patentee, a licensee cannot obtain monetary relief. *Arachnid* 939 F.2d at 1579–1580; *Rite–Hite* 56 F.3d at 1551–1552.

■ Mission holds a mere license to manufacture, sell and offer for sale hockey shield products incorporating Oakley's '848 patent. It does not hold legal title to the patent. Therefore, it cannot recover monetary damages for patent infringement.

■ Oakley also argues that a clause in the Settlement and License Agreement is a liquidated damages clause that precludes Mission from obtaining money damages for breach of the Agreement. Mission contends that Oakley's characterization of the clause as a liquidated damages clause is erroneous. The clause debated by the parties states in pertinent part:

"...Should Oakley fail to take action against a company on the Mandatory Enforcement List [2] ... then Itech shall be relieved of its obligation to pay the royalties required under this... Agreement."

Contrary to Oakley's contention, the clause is not a liquidated damages clause. The clause simply states that if Oakley fails to take action against certain third party infringers, Itech is relieved of its obligation to pay royalties. The clause does not state any particular amount of monetary damages shall be paid in the event of breach of the Agreement. Therefore, the Court concludes that Mission may maintain its demand for damages for breach of the Agreement. As a result, Oakley's Motion to Strike Mission's Demand for Damages is GRANTED in part and DENIED in part.

#### 2. *Mission's Request for Jury Trial*

■ Oakley argues that Mission's Request for Jury Trial should be stricken because Mission has waived that right by entering into a stipulation vesting jurisdiction of this case with this Court. Mission argues that the stipulation to jurisdiction in this Court does not waive its right to a jury trial.

In the Oakley case (case no. 01–2374), the parties stipulated, and the Court ordered, that the undersigned would have jurisdiction to decide all disputes arising out of the settlement agreement, and that *any decision by the undersigned* would be final, binding, with no appeal. (Consent to Jurisdiction of A Magistrate Judge & Order of Reference, February 18, 2003, case no. 01–2374, emphasis added) After the

support of its Motion to Dismiss. The Court does not rule on these objections because it has not considered the submitted exhibits in reaching its decision.

**2.** The Mandatory Enforcement List is an exhibit to the Settlement and License Agreement. The list contains names of entities against whom Oakley must use all reasonable efforts, including litigation, to stop those entities from selling products that infringe on the '848 patent.

instant case was filed, the parties stipulated that the instant case would be transferred to the undersigned for all purposes.

Oakley asserts that where the undersigned is endowed with all authority to resolve this matter, a jury trial has been waived by the parties as to all matters arising out of the Agreement. (Mot. at 16) Oakley mischaracterizes the issue as one of waiver of a jury demand.

The Consent to Jurisdiction of A Magistrate Judge & Order of Reference, that counsel signed on January 31, 2003 and February 3, 2003 and which was ordered on February 18, 2003, states in pertinent part "...The intent of the parties is to provide the Magistrate Judge with plenary authority to achieve finality regarding disputes between/among the parties, to reduce the risk of future litigation, minimize expense, and afford a venue for the parties to solve disputes with a minimum of expense." As part of the undersigned's authority is the ability to impose sanctions or penalties as deemed appropriate, that are commensurate with the nature and severity of the dispute and resolution thereof. The authority includes, but is not limited to, monetary or injunctive relief and the imposition of sanctions.

The Court does not interpret the Consent to Jurisdiction of A Magistrate Judge & Order of Reference to *waive* a request for a jury trial. However, the Consent to Jurisdiction of a Magistrate Judge & Order of Reference expressly states that the undersigned would have jurisdiction to decide all disputes arising out of the Settlement Agreement and any decision by the undersigned would be final, binding, with no appeal. A jury trial would not comport with the Consent to Jurisdiction of A Magistrate Judge & Order of Reference. The parties expressly gave the undersigned the jurisdiction to decide future disputes. The parties did not contemplate a jury deciding future disputes. Therefore, Oakley's Mo-

tion to Strike Mission's Request for Jury Trial is GRANTED.

## C. *Conclusion*

The Court, having reviewed the Motion of Defendant Oakley, the Opposition to the Motion of Mission, the Reply to the Opposition of Oakley, and GOOD CAUSE APPEARING, hereby:

1. GRANTS with prejudice Oakley's Motion to Dismiss Mission's cause of action for Patent Infringement; and

2. GRANTS in part and DENIES in part Oakley's Motion to Strike Mission's Demand for Damages and Request for Jury Trial.

IT IS SO ORDERED.