# United States Court of Appeals
# for the Federal Circuit

_____

**WIAV SOLUTIONS LLC,**
*Plaintiff-Appellant,*

**v.**

**MOTOROLA, INC.,**
*Defendant-Appellee,*

AND

**NOKIA CORPORATION AND NOKIA INC.,**
*Defendants-Appellees,*

AND

**PALM, INC.,**
*Defendant-Appellee,*

AND

**MINDSPEED TECHNOLOGIES, INC.,**
*Defendant-Appellee,*

AND

**SONY ERICSSON MOBILE COMMUNICATIONS AB**
AND
**SONY ERICSSON MOBILE COMMUNICATIONS (USA), INC.,**
*Defendants-Appellees,*

AND

**PERSONAL COMMUNICATIONS DEVICES LLC**
AND
**PERSONAL COMMUNICATIONS DEVICES HOLDINGS, LLC,**

AND **UTSTARCOM, INC.,**
*Defendants.*

––––––––––––––––––

2010-1266

––––––––––––––––––

Appeal from the United States District Court for the Eastern District of Virginia in case No. 09-CV-0447, Senior Judge Robert E. Payne.

––––––––––––––––––

Decided: December 22, 2010

––––––––––––––––––

J. MICHAEL JAKES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were E. ROBERT YOCHES; CHRISTOPHER SCHULTZ, of Cambridge, Massachusetts; SCOTT A. HERBST and LILY LIM, of Palo Alto, California.

JOSEPH E THOMAS, Thomas Whitelaw & Tyler LLP, of Irvine, California, for defendant-appellee Mindspeed Technologies, Inc. With him on the brief for Mindspeed was KERRI A. RICH.

WILLIAM K. WEST, JR., Howrey LLP, of Washington, DC, argued for all defendants-appellees With him on the brief for Motorola, Inc., were GREGORY J. COMMINS, JR., and ANDREW R. SOMMER, of Washington, DC; and JONATHAN E. RETSKY, of Chicago, Illinois. On the brief for Nokia Corporation et al., were FRANK G. SMITH, III, SIRAJ M. ABHYANKAR, JOHN D. HAYNES and RYAN W. KOPPELMAN, of Alston & Bird LLP, of Atlanta, Georgia.

On the brief for Sony Ericsson Mobile Communications AB et al. were KEVIN P.B. JOHNSON, Quinn Emanuel Urquhart Oliver & Hedges LLP, of Redwood Shores, California, and ERIC HUANG, of New York, New York. On the brief for Utstarcom, Inc. was DANA D. MCDANIEL. On the brief for Palm, Inc., were ROBERT M. TYLER and JOHN LEE NEWBY, II, McGuire Woods LLP, of Richmond, Virginia. On the brief for Personal Communications Devices LLC et al. were THOMAS R. DESIMONE, Gibbons P.C., of New York, New York, and ANDREW M. GRODIN, of Newark, New Jersey.

---

Before RADER, *Chief Judge*, LINN and DYK, *Circuit Judges.*

LINN, *Circuit Judge.*

WiAV Solutions LLC ("WiAV") is the owner of United States Patent No. 6,539,205 ("the '205 Patent") and No. 6,680,920 ("the '920 Patent") and the purported exclusive licensee in a specific field of use of the following seven patents owned by Mindspeed Technologies, Inc. ("Mindspeed"): United States Patent No. 6,104,992; No. 6,256,606; No. 6,385,573 ("the '573 Patent"); No. 6,507,814; No. 6,633,841; No. 7,120,578; and No. 7,266,493 ("the '493 Patent") (collectively, "the Mindspeed Patents"). WiAV filed a complaint alleging that defendants Motorola, Inc.; Nokia Corporation; Nokia Inc.; Palm, Inc.; Sony Ericsson Mobile Communications (USA), Inc.; Personal Communications Devices LLC; Personal Communications Devices Holdings, LLC; and UTStarcom, Inc. (collectively, "the Defendants") and Sony Ericsson Mobile Communications AB had infringed all nine patents. At the urging of the Defendants, the United States District Court for the Eastern District of Virginia dismissed the counts of WiAV's complaint concerning the

Mindspeed Patents for lack of constitutional standing. *WiAV Solutions LLC v. Motorola, Inc.*, 679 F. Supp. 2d 639 (E.D. Va. 2009) ("*Dismissal Order*"). The district court concluded that WiAV lacked constitutional standing to assert the Mindspeed Patents against the Defendants because several third parties have a limited right to license the patents in WiAV's alleged exclusive field of use. *Id.* at 648.

Because the district court erred when it concluded that the third-party licensing rights at issue deprived WiAV of constitutional standing to assert the Mindspeed Patents against the Defendants, this court reverses the judgment of the district court and remands for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. The Mindspeed Patents

The Mindspeed Patents relate to aspects of signal transmission, as well as the encoding and decoding of data. At the center of this dispute are licensing rights in the Mindspeed Patents held by six third parties: Conexant Systems, Inc. ("Conexant"); Rockwell Science Center, LLC ("Rockwell Science Center"); Skyworks Solutions, Inc. ("Skyworks"); Qualcomm Incorporated ("Qualcomm"); Mindspeed; and Sipro Lab Telecom ("Sipro"). The rights stem from a series of spin offs and licensing agreements dating back to the late 1990's. These transactions, as well as the transaction purporting to grant WiAV an exclusive license to the Mindspeed Patents, are summarized below.

### 1. Rockwell Science Center-Conexant License

Rockwell International Corporation ("Rockwell International"), the original owner of the Mindspeed Patents, effected an assignment of the patents to Conexant when Rockwell International spun off the company in December

1998. As part of the spin-off, Conexant granted a subsidiary of Rockwell International, Rockwell Science Center, a limited, non-exclusive license to use the Mindspeed Patents in connection with its business. Conexant also permitted Rockwell Science Center to: (1) sublicense Rockwell International and its "Affiliates," i.e., any entity that "controls, is controlled by, or is under common control with" Rockwell International; and (2) transfer the license in connection with the sale by either Rockwell International or its Affiliates of all or part of their respective businesses "to which such intellectual property rights relate."

### 2. Conexant-Skyworks License

When Conexant subsequently spun off a portion of its business as Skyworks in January 2003, Conexant and Skyworks executed an agreement giving Skyworks an exclusive license in the field of "Wireless Handsets" to commercialize products covered by the Mindspeed Patents. The agreement defines a "Wireless Handset" as a device (or a component of a device) that "is capable of wireless communication of real-time voice" and "communicates directly to a Wireless WAN Infrastructure." Within this limited field, the agreement grants Skyworks the exclusive right to assert infringement claims against third parties and to assign or sublicense its rights as it sees fit. The agreement also provides Skyworks the exclusive right to license the patents to Qualcomm in all fields, as well as the right to assert infringement claims under the patents against Qualcomm in all fields, but prohibits Skyworks from assigning these rights without the prior written consent of Conexant.

For its part, Conexant retained the right under the agreement to "make, have made, use, offer to sell, export, and import Conexant Products in the field of Wireless

Handsets." The agreement defines "Conexant Products" as products in which "the specifications and designs . . . are developed or owned by, or exclusively licensed to, Conexant or a Subsidiary of Conexant." Conexant may license this right as part of "a divesture, sale, or spin-off of any Conexant business unit . . . and/or . . . to any third party that works under a joint development agreement with Conexant" to develop a Conexant Product. Conexant also reserved the right to sublicense its wholly-owned subsidiary Mindspeed with respect to "Mindspeed Products"—products having "specifications and designs . . . developed or owned by, or exclusively licensed to Mindspeed or a Mindspeed Subsidiary"—including a limited right to allow Mindspeed to assign and license its rights in the Mindspeed Patents.

### 3. Conexant-Mindspeed License

Conexant assigned title to the Mindspeed Patents to their current holder, Mindspeed, when Conexant spun off Mindspeed in June 2003. In addition, Conexant gave Mindspeed rights in the Mindspeed Patents similar to those Conexant had reserved for itself when it spun off Skyworks. In particular, Conexant granted Mindspeed a non-exclusive license to, among other things, produce and market Mindspeed Products. Conexant also permitted Mindspeed to: (1) assign some of its rights to Mindspeed subsidiaries; and (2) sublicense its rights to Mindspeed subsidiaries; to divested, sold, or spun-off business units; and to joint development partners working on Mindspeed Products. Conexant again reserved for itself a similar set of rights to practice, assign, and license the patents with respect to Conexant Products.

### 4. Skyworks-Qualcomm License

In April 2005, two years after Skyworks received the right to license Qualcomm, Skyworks exercised that right

and granted Qualcomm a non-exclusive license to make, import, and sell components for a particular type of wireless communication device. The license permits Qualcomm to extend this right to Qualcomm "Affiliates," i.e., "any present or future Parent . . . or . . . Subsidiary" of Qualcomm.

### 5. Mindspeed-Sipro License

The parties do not dispute that Mindspeed granted Sipro the right to offer a limited license to two of the Mindspeed Patents (the '573 and '493 patents) as part of a patent pool for the G.729.1 speech coding standard. The license permits licensees to manufacture and sell "Licensed Products" for the sole purpose of encoding and decoding data in accordance with the speech coding standard. The term "Licensed Products" excludes all "Wireless Applications," which the license defines as any product or service capable of supporting communication over a wireless interface. But the license notes that WLAN, a wireless communication method, is not included within the definition of "Wireless Application."

### 6. Skyworks-WiAV License

Finally, in September 2007, Skyworks and WiAV entered into an agreement granting WiAV the rights WiAV asserts in the underlying action. Under the agreement, WiAV received "all of Skyworks' right, title, and interest, in and to the [Mindspeed Patents] in the Wireless Handset field of use." The agreement explicitly provides WiAV the "exclusive right" to (1) make, use, offer to sell, export, and import hardware products in the field of Wireless Handsets; (2) assign and sublicense its rights in the Mindspeed Patents at its discretion; and (3) assert against third parties claims of infringement of the Mindspeed Patents in the Wireless Handset field, including the right to sue for past, current, and future infringements of

the patents. Skyworks agreed going forward "not to grant any additional licenses and/or covenants not to sue under, or otherwise encumber, any [Mindspeed Patent]." Skyworks, however, retained the right to license and sue Qualcomm in all fields of use, as Skyworks could not assign those rights without Conexant's written consent.

* * *

The following table summarizes the licensing rights held by each of the third parties mentioned above, including whom they may license, under which Mindspeed Patents they can extend a license, and any notable limitations on the scope of a potential license:

| Entity | Potential Licensees | Patents |
|---|---|---|
| Rockwell Science Center | Rockwell International and Affiliates | All |
| Conexant | Subsidiaries<br><br>Spin-offs<br><br>Joint Development Partners<br><br>(limited to Conexant Products) | All |
| Mindspeed | Subsidiaries<br><br>Spin-offs<br><br>Joint Development Partners<br><br>(limited to Mindspeed Products) | All |

| Skyworks | Qualcomm (but promised not to grant new licenses) | All |
|---|---|---|
| Qualcomm | Affiliates | All |
| Sipro | Anyone (limited to Mindspeed Products in the field of WLAN) | '573 and '493 patents |

## B. District Court Proceedings

In July 2009, WiAV filed a complaint alleging that the Defendants and Sony Ericsson Mobile Communications AB had manufactured and sold wireless communication devices that infringe the '205 and '920 patents, as well as WiAV's supposed exclusive right to practice the Mindspeed Patents in the field of Wireless Handsets. To satisfy prudential standing, the complaint also named Mindspeed as the "defendant patent owner" of the Mindspeed Patents. The Defendants moved to dismiss the counts of the complaint alleging that they had infringed the Mindspeed Patents (Counts 1-14), arguing that WiAV lacked constitutional standing to assert the Mindspeed Patents because WiAV is not an exclusive licensee of the patents. They claimed that in *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481 (Fed. Cir. 1998), this court held that a party cannot be an exclusive licensee of a patent when a third party has the right to license the patent. The Defendants argued that WiAV is not an exclusive licensee of the Mindspeed Patents because here six entities—Rockwell Science Center, Conexant, Sky-

works, Mindspeed, Qualcomm, and Sipro—each have the right to grant licenses to the patents in the field of Wireless Handsets.

The district court granted the motion to dismiss. The court acknowledged that under Federal Circuit precedent a party could be an exclusive licensee of a patent despite its license being subject to preexisting nonexclusive licenses held by others. *Dismissal Order*, 679 F. Supp. 2d at 646. But the court declined to adopt what it characterized as "a new legal principle that, if a grantor retains a limited right to sublicense, it does not defeat exclusivity." *Id.* at 648. The district court agreed with the Defendants that our *Textile Productions* decision established that a party could not be an exclusive licensee of a patent if others have the right to grant sublicenses under the patent, even if those sublicensing rights are limited to subsidiaries and affiliates. *Id.* at 647. Because the court concluded that at least Rockwell Science Center, Conexant, Mindspeed, and Qualcomm each retained a limited right to license the Mindspeed Patents in the field of Wireless Handsets, the court held that WiAV was not an exclusive licensee of the patents and therefore lacked constitutional standing. *Id.* The district court stated that the licensing rights held by Skyworks and Sipro "further weakened" WiAV's position but did not determine whether those rights, alone or collectively with the others, were sufficient to deprive WiAV of constitutional standing. *Id.* at 648. At the request of WiAV, the district court certified its judgment regarding the Mindspeed Patents as final under Federal Rule of Civil Procedure 54(b), *WiAV Solutions LLC v. Motorola, Inc.*, No. 3:09cv447, 2010 U.S. Dist. LEXIS 21508 (E.D. Va. Mar. 8, 2010), and WiAV timely appealed the judgment. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

The sole issue presented by this appeal is whether WiAV has constitutional standing to assert the Mindspeed Patents against the Defendants. This is a question of law that this court reviews de novo, applying Federal Circuit precedent. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376 (Fed. Cir. 2000).

WiAV argues on appeal that, at the behest of the Defendants, the district court improperly fashioned a new legal rule based on dicta in *Textile Productions*. According to WiAV, *Textile Productions* did not mention the type of third-party licensing rights at issue, much less hold that such rights prevent a party from being an exclusive licensee of a patent. WiAV contends that this court has never concluded that a party holding the exclusive rights in a patent held by WiAV lacks constitutional standing, even when those rights were subject to prior nonexclusive licenses. WiAV asserts that under our precedent a party is an exclusive licensee of a patent—and therefore has constitutional standing to assert the patent—when it holds any of the exclusionary rights in a patent.

The Defendants respond that although a party can be an exclusive licensee of a patent despite its license being subject to earlier nonexclusive licenses, this court has made clear that a licensee cannot be an exclusive licensee of a patent if others retain the right to license the patent. To support this argument, the Defendants point to our statement in *Textile Productions* that "if a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees. . . . To qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to *anyone else* a license in the area of exclusivity." 134 F.3d at 1484 (emphasis added). The Defendants note that several

district courts have cited both this statement and a similar declaration in *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), as the basis for holding that a license is not exclusive when others have retained the right to license the patent. Because WiAV's license under the Mindspeed Patents is subject to preexisting rights to sublicense held by several third parties, the Defendants assert that the district court correctly concluded that WiAV is not an exclusive licensee of the patents.

WiAV has the better of this argument. Article III, § 2 of the Constitution limits the jurisdiction of federal courts to "Cases" or "Controversies." The doctrine of constitutional standing serves to identify which disputes fall within these broad categories and therefore may be resolved by a federal court. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For a party to establish constitutional standing, it must "show that the conduct of which [it] complains has caused [it] to suffer an 'injury in fact' that a favorable judgment will redress." *Elk Grove*, 542 U.S. at 12 (citation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (alteration in original) (citation omitted).

Often a statute creates the necessary legally protected interest. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" (citation omitted)). The constitutional standing inquiry in such cases depends on "whether the . . . statutory provision on which the claim rests properly can be understood as granting per-

sons in the plaintiff's position a right to judicial relief." *Id.* The Patent Act of 1952 is the source of the legally protected interests at issue here. Under the Patent Act, a patent grants the patentee the right to exclude others from making, using, selling, or offering to sell a patented invention within the United States, as well as the right to exclude others from importing a patented invention into the United States. 35 U.S.C. § 271(a). Because the Patent Act creates the legally protected interests in dispute, the right to assert infringement of those interests comes from the Act itself. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) ("Standing in a patent infringement case is derived from the Patent Act . . . .").

The Act provides that a "patentee" has the right to initiate a "civil action for infringement of [its] patent." 35 U.S.C. § 281. The term "patentee" encompasses both the owner of the patent and the assignee of all substantial rights in the patent. *See* 35 U.S.C. § 100(d) (stating that the term "patentee includes not only the patentee to whom the patent was issued but also the successors in title to the patentee"); *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("[I]f the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281."). The Patent Act, however, does not limit the right to sue to only patent owners and assignees. *Intellectual Prop. Dev.*, 248 F.3d at 1346. This court has explained that a party has the right to sue for infringement of the patent "if that party has a legally protected interest in the patent created by the Patent Act, so that it can be said to suffer legal injury from [the] act of infringement." *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007)

(internal citation omitted). Such a party is commonly referred to as an "exclusive licensee."

Because the legally protected interests in a patent are the exclusionary rights created by the Patent Act, a party holding one or more of those exclusionary rights—such as an exclusive licensee—suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("Parties that hold the exclusionary rights [under a patent] are often identified as exclusive licensees, because the grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention."); *Intellectual Prop. Dev.*, 248 F.3d at 1346 ("A party . . . that has the right to exclude others from making, using, and selling an invention described in the claims of a patent is . . . injured by another entity that makes, uses, or sells the invention."); *Ortho Pharma. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995) (explaining that to have "standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights").[1] By

---

[1] An exclusive licensee generally must join the patent owner to the suit to satisfy prudential standing constraints, i.e., the "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (citation omitted). *See Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468-69 (1926) (explaining that, subject to an exception, an exclusive licensee must join the patent owner to an infringement suit initiated by the licensee); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (characterizing the requirement that an exclusive licensee add the patent owner to any patent infringement suit brought by the licensee "as being prudential rather than constitutional in nature"). It is undisputed that WiAV addressed any prudential standing

contrast, a so-called "bare licensee" holds nothing more than a promise from the patentee that the patentee will not sue the licensee for practicing the patented invention. *See Ortho Pharma. Corp.*, 52 F.3d at 1031-32. Such a licensee "suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee." *Id.* at 1031. *See also Sicom Sys.*, 427 F.3d at 976 ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement.").

Thus, the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury. Contrary to the suggestion of the Defendants, neither this court's *Textile Productions* nor *Mars* decision freed the constitutional standing inquiry from its legal injury mooring.

In *Textile Productions*, the court considered a narrow question: "whether a requirements contract for a patented product automatically converts the exclusive supplier into an exclusive licensee of the patent." 134 F.3d at 1484. On its face, the requirements contract made no mention of granting the supplier any of the exclusionary rights in the patent; it merely provided the supplier manufacturing rights. *See id.* at 1482-83. The court explained that determining whether the contract rendered the supplier an exclusive licensee of the patent required "ascertaining the intent of the parties . . . as manifested by the terms of [the requirements contract] and examining the substance of the grant." *Id.* The court concluded that the terms of

---

concerns by adding Mindspeed to the suit as the "defendant patent owner."

the requirements contract at issue did not demonstrate that the licensor intended to grant the supplier an exclusive license to the patent where the licensor "did not promise that all others . . . shall be excluded" from practicing the patented invention and "retained for itself important rights to license the invention to others." *Id.* at 1485. Nowhere did the *Textile Productions* court suggest that a party holding one or more of the exclusionary rights in a patent does not have standing to sue to protect those rights against infringement by an unauthorized third party. Nor is there any indication that the court created a bright-line rule that a party cannot be an exclusive licensee of a patent if others have the right to license the patent. The *Textile Productions* court simply concluded that the requirements contract at issue, which did not explicitly grant the supplier any of the exclusionary rights in the patent, did not demonstrate that the licensor intended to grant its supplier an exclusive license to the patent.

*Mars* is similarly inapposite. There, the court addressed whether a party was an *implied* exclusive licensee of the patents in suit in the absence of a written agreement explicitly granting the party exclusionary rights in the patents. *See Mars*, 527 F.3d at 1362-64, 1367. The *Mars* court noted that for the party to establish that it was an implied exclusive licensee of the patents it "must have received . . . the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Id.* at 1368. The court observed that "[b]y the same token, if the patentee *allows* others to practice the patent in the licensee's territory, then the licensee is *not* an [implied] exclusive licensee." *Id.* Because another entity had the right to practice the patents in the United States, the *Mars* court concluded that the party was not an implied exclusive

licensee of the patent and therefore lacked constitutional standing to sue. *Id.* As in *Textile Productions*, the *Mars* court did not suggest that a party holding the right to exclude an alleged infringer from practicing a patent does not have standing to sue. The court merely explained that courts will not imply an exclusive license when there is no indication that the licensor granted its licensee any of the exclusionary rights in a patent.

In sum, neither of these cases supports the proposition pressed by the Defendants on appeal: that for a licensee to be an exclusive licensee of a patent, the licensee must be the *only* party with the ability to license the patent. Indeed, this court has recently held otherwise. *See Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010) (concluding that a licensee was an exclusive licensee of a patent despite the licensor retaining the ability to license the patent to settle lawsuits). As explained above, a licensee is an exclusive licensee of a patent if it holds any of the exclusionary rights that accompany a patent.

Because an exclusive licensee derives its standing from the exclusionary rights it holds, it follows that its standing will ordinarily be coterminous with those rights. Depending on the scope of its exclusionary rights, an exclusive licensee may have standing to sue some parties and not others. For example, an exclusive licensee lacks standing to sue a party for infringement if that party holds a preexisting license under the patent to engage in the allegedly infringing activity. Similarly, an exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it. In both of these scenarios, the exclusive licensee does not have an exclusionary right with respect to the alleged infringer and thus is not injured by that alleged infringer. But if an exclusive licensee has the

right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated.

This court therefore holds that an exclusive licensee does not lack constitutional standing to assert its rights under the licensed patent merely because its license is subject not only to rights in existence at the time of the license but also to future licenses that may be granted only to parties other than the accused. If the accused neither possesses nor can obtain such a license, the exclusive licensee's exclusionary rights with respect to that accused party are violated by any acts of infringement that such party is alleged to have committed, and the injury predicate to constitutional standing is met.

With these principles in mind, the key question in determining whether WiAV has standing to assert the Mindspeed Patents against the Defendants is not, as the Defendants would have it, whether WiAV has established that it has the right to exclude *all* others from practicing the patent. The question is whether WiAV has shown that it has the right under the patents to exclude *the Defendants* from engaging in the alleged infringing activity and therefore is injured by the Defendants' conduct. This court concludes that WiAV has satisfied this standard.

Skyworks granted WiAV the exclusive right to practice and enforce the Mindspeed Patents in the Wireless Handset field, and neither Rockwell Science Center, Mindspeed, Conexant, Skyworks, Qualcomm, nor Sipro has the right to extend licenses to the Defendants in this area. Rockwell Science Center has the right to license Rockwell International and its Affiliates, as well as to

transfer its license in connection with a sale by Rockwell International or its Affiliates of all or part their businesses related to the Mindspeed Patents; it is undisputed that the Defendants do not and cannot fall into any of these categories. The ability of Mindspeed and Conexant to extend their licenses is limited to: (1) subsidiaries; (2) divested, spun off, or sold business units; and (3) joint development partners developing either a "Mindspeed Product" or a "Conexant Product," respectively. There is no evidence in the record that suggests the Defendants satisfy any of these criteria.

The Defendants assert that WiAV cannot be an exclusive licensee of the Mindspeed Patents because Skyworks still holds the right to license Qualcomm under the patents in all fields, despite Skyworks promising that it would not grant any new licenses under the Mindspeed Patents. But the relevant question is whether Skyworks can license the Defendants to practice the patents in WiAV's field of exclusivity, and nothing in the record indicates that Skyworks has this right.

The ability of Qualcomm to license its "Affiliates" is also immaterial, as there is no argument or evidence suggesting that the Defendants are Qualcomm Affiliates. The Defendants contend that Qualcomm could purchase and then license a supplier of the alleged infringing technology and thereby insulate downstream users of the technology from claims of infringement. But, whatever the merits of this proposition, to have standing to sue the Defendants at this point in the proceedings WiAV need only present a sufficient allegation of legal injury. *Cf. Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (explaining that the question of whether a party has standing to sue is separate from the question of whether the party has a cause of action).

Finally, the Defendants suggest that Sipro, unlike the other third parties at issue, can extend licenses to the Defendants under at least two of the Mindspeed Patents to engage in the allegedly infringing activities. But Sipro received its right to license the Mindspeed Patents from Mindspeed, and the ability of Mindspeed to license the patents is limited to Mindspeed Products, which are not at issue here. Because Sipro cannot have greater rights than its licensor, Sipro cannot license the Defendants to engage in the conduct that forms the basis of the underlying infringement action. *See Prima Tek II*, 222 F.3d at 1382 ("[A]n owner or licensee of a patent cannot convey that which it does not possess.").

## CONCLUSION

For the foregoing reasons, this court reverses the judgment of the district court and remands for further proceedings consistent with opinion.

## REVERSED AND REMANDED

## COSTS

Costs are awarded to WiAV.