# United States Court of Appeals for the Federal Circuit

---

**UNIVERSITY OF SOUTH FLORIDA RESEARCH FOUNDATION, INC.,**
*Plaintiff-Appellant*

**v.**

**FUJIFILM MEDICAL SYSTEMS U.S.A., INC.,**
*Defendant-Appellee*

---

2020-1872

---

Appeal from the United States District Court for the District of Connecticut in No. 3:18-cv-00215-AVC, Senior Judge Alfred V. Covello.

---

SEALED OPINION ISSUED: October 22, 2021
PUBLIC OPINION ISSUED: November 23, 2021[*]

---

JOHN S. ARTZ, Dickinson Wright PLLC, Ann Arbor, MI, argued for plaintiff-appellant. Also represented by STEVEN A. CALOIARO, Reno, NV.

DAVID W. MARSTON, JR., Morgan, Lewis & Bockius

---

[*] This opinion was originally filed under seal and has been unsealed in part with the remaining sealed portions redacted from the public opinion.

LLP, Miami, FL, argued for defendant-appellee. Also represented by JITSURO MORISHITA, Tokyo, Japan; JACOB SNODGRASS, Washington, DC.

————————————

Before MOORE, *Chief Judge*, REYNA, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

The University of South Florida Research Foundation, Inc. appeals the United States District Court for the District of Connecticut's order dismissing its patent infringement suit against Fujifilm Medical Systems U.S.A., Inc. for lack of statutory and constitutional standing. For the reasons stated below, we vacate the court's dismissal and remand for further proceedings consistent with this opinion.

BACKGROUND

I

On April 7, 1997, the University of South Florida (USF) received a "Disclosure of Invention" entitled "Workstation-User Interface for Digital Mammography" which included internal number "USF #97A15." J.A. 363. On September 16, 1997, the inventors assigned all rights in the invention to USF as part of a Revenue Allocation Agreement between the inventors, USF, and the University of South Florida Research Foundation, Inc. (USFRF). J.A. 363–67. This agreement also stated that [redacted] J.A. 364.

The inventors later entered into a separate assignment agreement in 2002, in which they assigned their rights in invention disclosure number 97A015PRC to USF. J.A. 436–38. This assignment from the inventors to USF refers to invention disclosure number 97A015PRC as being [redacted] J.A. 436. U.S. Patent Application No. 10/081,135 issued on October 7, 2003, as

U.S. Patent No. 6,630,937 titled "Workstation Interface for Use in Digital Mammography and Associated Methods."

At some point, the Revenue Allocation Agreement between the inventors, USF, and USFRF was followed by a nunc pro tunc license agreement, which lists an effective date of July 4, 1997.  J.A. 265–66.  The nunc pro tunc agreement defines the "Subject Invention" as:

[redacted]

J.A. 265 ¶ 1.  This nunc pro tunc license agreement also [redacted] *Id.* ¶ 2.  In addition, the agreement states that [redacted] J.A. 266 ¶ 3.

## II

In May 2016, USFRF filed a patent infringement complaint asserting that medical imaging products and systems made by Fujifilm Medical Systems USA, Inc. infringed all claims of the '937 patent.  Compl., *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. USA, Inc.*, No. 3:18-cv-00215 (D. Conn. May 12, 2016), ECF No. 1. The complaint, amended complaint, and second amended complaint all included the following ownership assertion:

> The inventors of the '937 patent assigned their rights to the University of South Florida in Tampa, Florida.  The University of South Florida in turn assigned their rights to the '937 patent to the Plaintiff in this lawsuit, namely the University of South Florida Research Foundation, Inc. ("USFRF").  USFRF is currently the owner of the entire right, title and interest in United States Patent No. 6,630,937.

*See* Ruling on Motions at 3, *Univ. of S. Fla. Rsch. Found., Inc.*, No. 3:18-cv-00215 (D. Conn. May 11, 2020), ECF No. 267 ("Motions Ruling").

On June 6, 2019, Fujifilm moved for summary judgment, arguing that USFRF lacked so-called statutory standing to sue Fujifilm for patent infringement because the license agreement did not transfer all substantial rights to USFRF that would permit USFRF to bring suit by itself. Mot. for Summ. J., *Univ. of S. Fla. Rsch. Found., Inc.*, No. 3:18-cv-00215 (D. Conn. June 6, 2019), ECF No. 229, at 2 n.1. Five days later, on June 11, 2019, USFRF moved for leave to amend its Second Amended Complaint to "correct an inadvertent error" concerning its ownership of the '937 patent because "[USF] did not assign its rights to the '937 Patent to USFRF" but instead granted USFRF an exclusive license. J.A. 476–79.

On May 11, 2020, the district court dismissed the case under Federal Rule of Civil Procedure 12(h)(3) for lack of both statutory and constitutional standing, without prejudice. Motions Ruling at 34–35. The district court analyzed USFRF's statutory standing[1] based on the rights conveyed in the nunc pro tunc USF-USFRF license agreement. The agreement states that "USF and USFRF desire to cooperate in the development, protection, and commercial exploitation of the said invention," which the court concluded "implies a cooperative effort in the protection of the patent, rather than an exclusive granting of

---

[1]     In referring to this issue as "statutory standing," the district court followed some of our older cases in which we referred to whether a plaintiff may bring suit under 35 U.S.C. § 281 as "statutory standing." We have more recently clarified that § 281 is simply a statutory requirement; it does not "implicate standing or subject-matter jurisdiction." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019). Thus, this opinion will hereinafter refer to the issue as a statutory requirement rather than statutory standing.

the right to protect the patent to USFRF." *Id.* at 20. The district court determined that the "licensing agreement is silent on the transference of the right to sue," *id.* at 6, and "does not limit USF's ability to bring suit for alleged infringement," *id.* at 6, 17. The court also concluded that "USF did not exclusively license to USFRF all substantial rights" because "USF reserved to itself . . . the right to make, have made, develop, import and use the 'Subject Invention' for their internal research, clinical and educational purposes." *Id.* at 15–16. Thus, the court determined that USFRF's rights to the '937 patent were "limited by [USF's] retention." *Id.* at 16. The district court then held that USFRF did not meet the statutory requirement of being a patentee under 35 U.S.C. § 281 because USFRF is not an exclusive licensee with all substantial rights in the '937 patent. Therefore, the court held that USFRF could not bring the action in its own name without joining USF.

As to constitutional standing, the district court reasoned that because the "licensing agreement does not refer to the '937 patent and specifically references the 97A105 invention disclosure form . . . the 97A105 invention disclosure form appears to be a necessary document." *Id.* at 31. USFRF had refused to produce this document based on attorney-client privilege and the work-product doctrine. Instead, it relied on deposition testimony and several documents to show the relationship between the 97A105 invention disclosure form and the '937 patent. The court also found that USFRF "failed to show when the [nunc pro tunc] document was signed." *Id.* at 32. The district court then concluded that USFRF lacked Article III constitutional standing because it failed to establish that (1) the license agreement related to the '937 patent; and (2) USFRF held an exclusionary right when it filed its complaint because it did not establish that the license agreement was signed before the complaint was filed. *Id.* at 33–34.

USFRF appeals the district court's dismissal for lack of standing. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

### A

Only a "patentee" may bring a civil action for patent infringement. 35 U.S.C. § 281. Title 35 defines a "patentee" as the party to whom the patent was issued and the successors in title to the patentee, but it does not include mere licensees. 35 U.S.C. § 100(d). "A patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee," who may then maintain an infringement suit in its own name. *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358–59 (Fed. Cir. 2010). "To determine whether an exclusive license is tantamount to an assignment, we 'must ascertain the intention of the parties [to the license agreement] and examine the substance of what was granted.'" *Id.* at 1359 (alteration in original) (quoting *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001)).

Our court has listed several rights that should be examined "to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent," including:

the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the

> licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent.

*Id.* at 1360–61.

We have never, however, established a complete list of the rights that must be examined to determine whether a patentee has transferred away sufficient rights to render another party the owner of a patent. *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 619 (Fed. Cir. 2016) (quoting *Alfred E. Mann*, 604 F.3d at 1360). Instead, "we examine the 'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent." *Lone Star*, 925 F.3d at 1229 (quoting *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1321 (Fed. Cir. 2009)). Among the factors that we consider, the exclusive right to make, use, and sell, as well as the nature and scope of the patentee's retained right to sue accused infringers are the most important considerations in determining whether a license agreement transfers sufficient rights to render the licensee the owner of the patent. *Diamond Coating*, 823 F.3d at 619 (quoting *Alfred E. Mann*, 604 F.3d at 1360–61).

B

In determining whether the district court erred in concluding that USFRF was not the patentee under § 281, we find instructive our cases reviewing the transference of all substantial patent rights to the exclusive licensee.

For example, in *Alfred E. Mann*, we reversed and remanded the district court's holding that the licensor transferred so many rights that it no longer was the patentee. 604 F.3d at 1357. Patentee Alfred E. Mann Foundation for Scientific Research (AMF) licensed two of its

patents directed to cochlear implants to Advanced Bionics (AB). *Id.* The license agreement granted AB the right to exclusively make, have made, use, lease, offer to lease, sell, offer to sell, and commercially exploit the patents; the first right to sue to enforce the patents when either AMF or AB learned of any alleged or suspected infringement; the right to settle any AB-controlled litigation on any terms without any prior authorization by AMF; and the right to grant sublicenses. *Id.* at 1357–58. AMF also retained the right to sue to enforce the patents if AB declined to exercise its right to sue, the right to a significant portion of the recovery in infringement suits; the right to grant licenses to settle litigation initiated by AMF, the right to prevent AB from assigning its rights, the right to terminate the license agreement and any sublicenses if AB missed payments to AMF, and the obligation to pay maintenance fees on the patents. *Id.* at 1358. In addition, in litigation commenced by either AMF or AB, the other party to the agreement maintained the right to participate in the litigation by requiring the litigation-commencing party to keep it informed of the status of the litigation, but the non-commencing party was not permitted to interfere with the commencing party's control of the litigation. *Id.*

On appeal, we held that the district court erred by concluding that AMF effectively assigned the patents to AB and dismissing AMF's infringement claims. *Id.* at 1363. We explained that "the nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent." *Id.* at 1361. We then held that because AMF had complete discretion to control litigation it initiated, AMF's right to sue was not illusory, even though AMF's right to sue an infringer did not vest until AB declined to sue the infringer. *Id.* at 1362. We therefore determined that "[s]uch a broad right to decide

whether to bring suit and to control litigation is thoroughly inconsistent with an assignment of the patents-in-suit to AB." *Id.*

Similarly, in *AsymmetRx*, we determined that licensee AsymmetRx, Inc. could not maintain its patent infringement suit without joining the patentee because the patentee retained substantial interests in the patents-in-suit, including the right to sue for infringement. 582 F.3d at 1320. AsymmetRx's license agreement with the licensor (the President and Fellows of Harvard College) gave AsymmetRx the right of first refusal in suing alleged infringers, but if AsymmetRx elected not to exercise its right to sue, Harvard had the right to bring its own infringement action. *Id.* at 1320–21. If AsymmetRx initiated an infringement suit, the license agreement required AsymmetRx to consider Harvard's views and the public interest and seek Harvard's approval for any settlement of the suit. *Id.* Harvard also had the option to join the action and jointly control the suit with AsymmetRx. *Id.* at 1321. In holding that AsymmetRx could not sue on its own, we explained that "Harvard did not convey the entire right to enforce the patents to AsymmetRx" because, "viewing the retention of the right to sue in conjunction with all of the other rights retained by Harvard, it is clear that Harvard conveyed less than all substantial rights" in the patents-in-suit. *Id.* at 1321.

Likewise, in *Diamond Coating*, we affirmed the district court's dismissal of a licensee's patent infringement suit after finding that the licensee did not acquire all substantial rights in the patents-in-suit. 823 F.3d at 617. The inventors of the patents-in-suit assigned the patents to Sanyo, which conveyed various rights and interests in the patents to Diamond Coating in a license agreement. *Id.* at 617–18. The license agreement specified that (1) Diamond was prohibited from licensing the patents to a third party without Sanyo's consent; (2) Sanyo retained an economic interest in future proceeds, including

proceeds from litigation; (3) Sanyo retained a license to make, use, and sell products covered by the patents-in-suit; and (4) Sanyo retained significant control over the decision to enforce the patents because the agreement required that Diamond consider the best interests of both Diamond and Sanyo in enforcing the patents. *Id.* at 619. We found that "Sanyo retained significant control over Diamond's enforcement and litigation activities" because "the [agreement] condition[ed] Diamond's litigation and enforcement activities on Sanyo's best interests," "cabin[ed] Diamond's authority to license the patents-in-suit," and "limit[ed] Diamond's discretion to refrain from suing certain companies." *Id.* at 620–21. We also determined that "Diamond d[id] not possess sufficient rights to make, use, or sell the patented invention" given that the agreement reserved this right to Sanyo and did not grant Diamond a right to practice the patents-in-suit. *Id.* at 619–20. Therefore, the agreement did not convey all of the substantial rights in the patents-in-suit to Diamond.

C

Turning to the facts of this case in light of this precedent, we conclude that the district court did not err in holding that USFRF is not a patentee under § 281 and thus could not sue without patentee USF. We consider first and foremost the license agreement's failure to transfer USF's right to sue to USFRF. Indeed, as the district court noted, "the USF-USFRF licensing agreement is silent on the transference of the right to sue." Motions Ruling at 17. The agreement's silence on the right to sue accused infringers does not show an intent to transfer that right. Rather, it shows that USF retained the important right to enforce the patent against accused infringers. Our analysis in *Alfred E. Mann, AsymmetRx*, and *Diamond Coating* all support the district court's emphasis on the right to sue and its conclusion that USFRF cannot sue without the participation of USF.

UNIVERSITY OF SOUTH FLORIDA. v.                    11
FUJIFILM MEDICAL SYSTEMS

In addition, while certainly not dispositive, we agree with the district court that in combination with the other factors, the USF-USFRF damages award allocation of between ten and fifty percent weighs against the conclusion that USF transferred all substantial rights to USFRF. *Id.* at 17. Similarly, we consider USF's reservation of the right to [redacted] as weighing against the transference of all substantial rights to USFRF. *Id.* at 18; *see* J.A. 266 ¶ 3. While we acknowledge that the license agreement transfers significant rights to USFRF and that the [redacted] duration of the license agreement is substantial, we agree with the district court that USF retained enough important rights to conclude that USF did not transfer all substantial rights in the patent.[2]

Citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000), USFRF argues that its royalty-free right to sublicense renders the right to sue retained by USF illusory. Appellant's Br. 29–31. In *Speedplay*, this court held that the licensee's right to grant royalty-free sublicenses to defendants sued by the licensor rendered the licensor's right to sue illusory. 211 F.3d at 1251. But we view this case to be more analogous to *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049 (Fed. Cir. 2020), than *Speedplay*. Here, as in *Immunex*, the patent owner and licensee are required to cooperate in enforcement of the '937 patent. As explained in the agreement, "USF and USFRF desire to cooperate in the development, protection, and commercial exploitation of the said invention." J.A. 265; *see, e.g.*, *Immunex*, 964 F.3d at 1061 (explaining

---

[2]    Fujifilm argues for the first time on appeal that USFRF is not a patentee under § 281 because the United States Government has certain unknown rights in the invention. Appellee's Br. 25–27. Because we conclude that USFRF is not a patentee for the reasons discussed above, we need not consider Fujifilm's new argument.

that patent owner "Roche [was] required to cooperate in any Immunex-initiated infringement suit" and that licensee "Immunex further ha[d] a duty to cooperate in such a Roche-initiated suit"). As such, we find USFRF's reliance on *Speedplay* misplaced.

II

To establish constitutional standing under the case-or-controversy requirement of Article III, a plaintiff must demonstrate that it has suffered an "injury in fact." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). We have held that "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).

We apply regional circuit law to our review of a dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit. *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1108 (Fed. Cir. 2020) (quoting *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002)). The Second Circuit reviews "factual findings for clear error and legal conclusions de novo, accepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 52–53 (2d Cir. 2019) (emphasis omitted) (quoting *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (reviewing a Rule 12(h)(3) dismissal)); *see also James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018) (courts reviewing a dismissal "for want of standing . . . must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining

party" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975))).

The district court dismissed this case for lack of constitutional standing because it found that (1) USFRF did not demonstrate that the invention disclosure number in the license agreement corresponded to the '937 patent; and (2) USFRF did not provide evidence of when the license agreement was signed. We address each ground in turn below.

A

First, the district court clearly erred by concluding that the only way USFRF could establish that the license agreement covered the '937 patent was by waiving its attorney-client privilege and work-product protection and producing the 97A105 invention disclosure form. Motions Ruling at 31 ("[A]t this stage of the pleadings and in light of Fujifilm's allegation that USFRF lacks constitutional standing, the 97A105 invention disclosure form appears to be a necessary document."). Fujifilm argues the district court's finding is not clearly erroneous because the invention disclosure form defines the scope of the license agreement, and that because USFRF refused to produce it, there is no way to confirm that USFRF has a written license to the '937 patent. Appellee's Br. 15–16. We disagree.

The assignment from the inventors to USF refers to invention disclosure form 97A015 as being "set forth in" the continuation application filed on February 22, 2002, and assigned Serial No. 10/081,135. J.A. 436. The face of the '937 patent lists corresponding Application Serial No. 10/081,135. The correlation of the patent application serial number listed on the assignment and the face of the patent should have been sufficient in this case to prove that the license agreement covered the '937 patent. As additional support, USFRF's sublicense agreement identifies USF reference number 97A015PRCCN as

corresponding to Application Serial No. 10/081,135 and the '937 patent. J.A. 392–408. Accordingly, the district court clearly erred by holding that USFRF failed to show that the invention disclosure number in the license agreement corresponded to the '937 patent.

B

Second, the district court erred in determining that USFRF lacked constitutional standing because the license agreement "is an undated nunc pro tunc document that is retroactive to July 4, 1997, however, [USFRF] failed to show when the document was signed." Motions Ruling at 32. Even if the license agreement was signed after the filing of the complaint, USFRF would have held at least one exclusionary right in the patent under the Revenue Allocation Agreement. It is undisputed that the Revenue Allocation Agreement (1) preceded the license agreement; (2) was signed in September 1997 prior to the filing of the complaint; and (3) provides that [redacted] J.A. 364. We construe this language in the Revenue Allocation Agreement to convey at least one exclusionary right in the patent-in-suit to USFRF. As we have held, constitutional standing is satisfied when a party holds at least one exclusionary right. *See WiAV*, 631 F.3d at 1264–65, 1267; *Morrow v. Microsoft*, 499 F.3d 1332, 1340–41 (Fed. Cir. 2007); *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001).

Fujifilm argues that USFRF cannot rely on the Revenue Allocation Agreement to establish constitutional standing because the issue of standing was briefed by the parties in view of the license agreement. But, in the district court, Fujifilm's only challenge to USFRF's constitutional standing was that the 97A105 invention disclosure form allegedly did not correspond to the '937 patent. Because the district court *sua sponte* raised this issue of whether USFRF held an exclusionary right in the patent

at the time of filing, we cannot fault USFRF for not relying on the Revenue Allocation Agreement until after the court's decision.

Because the district court's holding that USFRF lacked constitutional standing rests on two clearly erroneous findings of fact, the district court's dismissal was clearly erroneous.

## CONCLUSION

For the reasons above, we hold USFRF fails to meet the statutory requirements of § 281 but does meet the requirements of constitutional standing. Because the district court's dismissal was predicated on constitutional standing, we remand for further proceedings consistent with this opinion, including a determination of whether USFRF may join USF.[3]

## VACATED AND REMANDED

### COSTS

No costs.

---

[3] We note that USFRF has filed other complaints jointly with USF after filing the present suit. *See Univ. of S. Fla. Rsch. Found., Inc. and Univ. of S. Fla. Rsch. Bd. of Trs. v. Fujifilm Medical Sys. USA, Inc.*, No. 1:20-cv-4080 (S.D.N.Y. May 27, 2020); *Univ. of S. Fla. Rsch. Found., Inc. and Univ. of S. Fla. Rsch. Bd. of Trs. v. Hologic, Inc.*, No. 20-352 (D. Del. Mar. 3, 2020).